TRESPASS.

*Case* 45.

October 17.

Case stated.

# Rodman *vs* Harcourt & Carico.

### ERROR TO THE SPENCER CIRCUIT.

*Incompatible offices.    Officers de jure and de facto.*

JUDGE MARSHALL delivered the opinion of the Court.

THIS was an action of trespass brought by Rodman against Harcourt and Carico, for taking and carrying away the horse and divers sheep of the plaintiff. Carico, by his separate plea, justified the taking as Constable, and under an execution against the plaintiff for $50, &c. issued by Harcourt, an acting Justice of the Peace; and Harcourt justified as a Justice of the Peace, showing that as such, he had issued a warrant against the plaintiff, at the suit of Harrison's administrator, pronounced judgment and issued the execution against him. To each of these pleas the plaintiff replied in substance, that when and before Harcourt issued the execution and rendered the judgment and received the commission of a Justice of the Peace, he was in the enjoyment and exercise of the office and profits of a Post-master, under the government of the United States, and was exercising and holding said office. Demurrers to each of the replications were sustained, and judgment having been rendered against the plaintiff in favor of each of the defendants, he prosecutes a writ of error.

The question presented by the pleadings.

It being admitted by the demurrers, that Harcourt, who had rendered the judgment and issued the execution under which the plaintiffs property was taken by Carico

was a Postmaster under the United States' government, at the time he received a commission as a Justice of the Peace of this Commonwealth, and that he continued to hold and exercise that office and enjoy its profits after he received the commission, and when he rendered the judgment and issued the execution. The plaintiff relies upon the 17th Section of the 6th Article of the Constitution of Kentucky, as rendering void his commission or acceptance of the office of Justice of the Peace and all his acts done in that character; and contends that consequently both Harcourt, who issued the execution directing the seizure of his property, and Carico, who obeyed it, are trespassers and liable to this action.

By the section of the constitution referred to, it is declared that "no person holding or exercising any office of trust or profit under the United States, or either of them, or under any foreign power, shall be eligible as a member of the General Assembly of this Commonwealth, or hold or exercise any office of trust or profit under the same." There can be no doubt that a Postmaster, acting as such under the government of the United States, holds an office under that government, which by the above quoted clause of our constitution, is incompatible with the office of a Justice of the Peace of this Commonwealth; and the constitution, as applied to his case, expressly prohibits his holding or exercising the latter office, while he holds and exercises the former. What then is to be the effect of his acts, done in the character of a Justice of the Peace? Is he rightfully a Justice of the Peace? Can he protect himself against liability for forcible acts done under his command, by saying he commanded them in virtue of his office as a Justice? And will his precept protect the Constable who has obeyed it?

17th section 6th article Constitution of Ky.

These are grave, and so far as we know, entirely novel questions, occurring as they do in consequence of the incompatibility of two offices exercised by the same person, under commissions emanating from two distinct, and in this respect, independent governments.

It is not denied that these two offices are incompatible, but it is contended that the legal consequence of that incompatibility is, that by the acceptance of the office of

Justice of the Peace under this government, the incompatible office pieviously held, is, *ipso facto, vacated,* and that on this principle, Harcourt is rightfully a Justice of the Peace, and exercises the office of Postmaster wrongfully, and that consequently, his lawful acts and rights as a Justice should not be affected by his wrongful acts as a Postmaster. But will this argument satisfy the constitution, which in effect declares, that no person who holds or exercises the office of Postmaster under the United States shall hold or exercise the office of Justice of the Peace under this State? Does it not, on the contrary, involve an absolute surrender of the prohibition declared by our constitution?

If an office, incompatible with one previously held, be accepted by an individual who admits or knows the incompatibility, the acceptance of the second implies a renunciation of the first; and if the two offices emanate from the same government which declares them to be incompatible, *the acceptance of the second may be regard-ed as, ipso facto, a vacation of the first,* since the government having power over both offices, can and will enforce the renunciation implied in that act, by regarding the first office as vacated, by prohibiting or even punishing any attempt further to exercise it, or by filling it with another at its pleasure.

The common law principle which vacates one office by the acceptance of another which is incompatible with it, applies to cases where both offices are held under the same government, or under authorities, one of which is in strict subordination to the other. The common law principle which declares the first office vacated by the acceptance of another, which is incompatible with it, is applicable to cases where the two offices are held under the same authority or under authorities of which one is in strict subordination to the other. For in other cases, and especially in the present, however consonant the conclusion that the first office is vacated by acceptance of the second, may be with reason and good conscience, still as mere reasoning cannot vacate an office, the only practical effect of admitting the conclusion that the first office is vacant because the second has been accepted, when in point of fact the first is still held and exercised as it was before, and as must be presumed, with the approbation of that government which alone has the power of effectually determining whether it is or is not vacant, is to permit both offices to be exercised

by the same person, notwithstanding their incompatibility; and thus in effect to annihilate the constitutional prohibition or leave its vindication to another government which makes no such prohibition and acknowledges no such incompatibility.

The right of Harcourt to hold and exercise the office of Postmaster does not depend upon the constitution and laws of Kentucky, but upon the constitution and laws of the United States, and they establish no incompatibility. By those laws, and by the will and confidence of the constituted authorities of that government, he is allowed to hold and exercise the office of Postmaster, notwithstanding his acceptance of an office incompatible with it by the constitution of this State.   There is no power in Kentucky to enforce the implied renunciation or vacation of the office of Postmaster, if there be, under the circumstances, any such implication from the acceptance of the appointment as Justice of the Peace.   She has no power to punish or prevent the continued exercise of the former office, or effectually to treat such continued exercise as illegal, or to put another into the office.   The declaration, therefore, by her or by her judicial tribunals, that the office of Postmaster was vacated by the acceptance of that of Justice of the Peace, is worse than nugatory, if it be made as the basis of the legal conclusion that, therefore, the holding and exercise of the office of Justice of the Peace, is lawful, though the incumbent still, in fact, holds and exercises that of Postmaster.   The effect of such a course of reasoning would be to allow the same person to hold and exercise the two incompatible offices in direct violation of the constitutional prohibition, and without any means left for its enforcement.   For if it be admitted that he lawfully holds and exercises the office of Justice, notwithstanding his continuance to hold and exercise, (though unlawfully as the argument assumes,) the office of Postmaster, there could be no just ground for punishing him, by impeachment or otherwise, for his exercise of the former office, since that, (according to the argument,) would be lawful under our constitution and laws, and there is no power to punish him for the exercise or alledged usurpation of the latter, since the legality of

Rodman
vs
Harcourt, &c.

his acts in that office and his right to hold it, depend upon the laws of another government, to which belongs exclusively the power of determining whether they are broken and of vindicating their breach. A course of argument which thus leads to a conclusion that would render the State of Kentucky powerless for the maintenance of her own constitution, as to a matter in regard to which she has the undoubted right to prescribe a rule binding upon herself and her citizens, must be radically defective; and the defect consists in attempting to point the force of the rule against the holding of an office over which she has no power, and pretends to none, instead of directing it against the exercise of that office which is of her own creation, and over the qualifications for, and terms of holding which, she has complete and undisputed power.

The people of Kentucky could not say in their constitution, that no person who accepts a commission of Justice of the Peace from them, and acts as such, shall hold or exercise the office of Postmaster under the United States, because they have no right to say what shall be the qualifications for the latter office, or by whom or on what terms it shall be held or exercised. But they could say that no person holding or exercising the office of Postmaster under the United States shall be appointed a Justice of the Peace, or shall hold or exercise that office, because they have a perfect right to determine the qualifications for this office, and the terms or conditions on which it shall be held and exercised. If, therefore, this was a question upon the construction of the clause of the constitution which has been quoted, whether the prohibition applied to the office of Postmaster or to that of Justice of the Peace, we should feel bound to declare, even if upon the words of the clause it were doubtful, that it applied to the office over which the State had power, and not to that over which it had no power. But there is no such question nor any room for it. The constitution has not attempted to prescribe a disqualification for the office of Postmaster, but has unequivocally and peremptorily established a disqualification for holding or exercising the office of Justice of the Peace. The circumstances of disqualification are fixed upon Harcourt by the averments

*The people of Kentucky have the right to declare what shall be the qualifications of officers under their government but not of the government of the U. States.*

of the replication admitted by the demurrer. The constitution, therefore, addressing itself to him, prohibited him from holding the office of a Justice of the Peace and from acting as such. And the question is, whether he can shield himself from liability for his acts, by alledging that they were done in virtue of an office which the constitution prohibited him from holding or exercising? Can he plead an authority in himself which the fundamental law under which he claims that authority, says he shall not have or exercise? Can he plead his own personal violation of the constitution as a bar to his own personal liability for acts which the constitution prohibited him from doing? We are decidedly of opinion that he cannot; and that a contrary determination would involve the inconsistency of deciding that the law, or the Court, for the law cannot do it, should sanction, by its protection, a violation of the constitution.

We do not mean to say that because Harcourt was Postmaster he could not be appointed a Justice or accept and swear to the commission. But if he intended to act as a Justice of the Peace it was his duty to give up the office of Postmaster, and to cease performing its duties, as soon at least as a successor could be appointed and installed. Perhaps he could not properly have qualified as Justice until he had actually ceased to act as Postmaster. Perhaps upon his continuing to exercise that office after he was commissioned as Justice, another might lawfully have been commissioned to the latter office. It is not necessary, however, to decide, and we do not mean to decide whether Harcourt ever was, constitutionally, a Justice of the Peace, nor if he was, when he ceased to be so, nor whether, if he has now ceased or should hereafter cease to act as Postmaster, before another is appointed to the same office of Justice of the Peace, he may lawfully act under his commission as Justice. The constitution not only prohibits the holding of the two offices by the same person, but declares that while he holds or exercises the office of Postmaster he shall not exercise that of 'Justice. And we are of opinion that as, when he rendered the judgment and issued the execution against the plaintiff, he was both holding and exercising the office of

*Marginal note:* Rodman vs Harcourt, &c.

*Marginal note:* One who is acting as Postmaster, cannot act as a Justice of the Peace in Ky. but is liable in trespass for attempting to exercise the office of Justice of the Peace.

Postmaster, the effect of the prohibition is, that he had no power or authority to do those acts, and therefore, that he can no more justify issuing the execution in virtue of his commission, or of the office which it professed to confer, than he could by an assumption of that office without color of title. Having no right to act as a Justice, being in truth prohibited by the highest authority from doing so, the fact that he did act as a Justice in issuing the execution commanding the plaintiff's property to be taken, can no more protect him than if he had been a private individual assuming by his own mere will, to direct such an act. Having no legal power or authority to direct or command the taking of the plaintiff's goods, he is liable as a trespasser, for their having been taken under his command, as much as any other individual is liable, when without authority, he directs a trespass which is actually committed. The distinction between the cases is, that he has acted not merely without the authority of law, but also in direct violation of the constitution. If it were admitted that Harcourt, having a regular commission, should be regarded as a nominal or titular Justice of the Peace, and that some public proceeding would be necessary for vacating the office or declaring it to be vacant, before another person could properly be appointed; this concession, however it might affect the question as to the efficacy of his acts, so far as the public and third persons are concerned, cannot, as we conceive, be entitled to any bearing upon the question of his personal liability for doing an act under color of being a Justice of the Peace, when he was expressly prohibited from doing that or any other act as a Justice of the Peace.

The replication, therefore, as it shows facts which rendered it illegal for Harcourt to act as a Justice, must be deemed a good answer to his plea, and sufficient until it is itself answered, to maintain the action as to him, and, consequently, the Court erred in sustaining his demurrer to the replication.

But the question as to Carrico, who, as Constable, obeyed the mandate of the execution issued by Harcourt, stands upon different grounds. There are many cases in which a Justice of the Peace, *de facto* and *de jure*, may

be liable to an action of trespass for acts done under his warrant or precept, and yet the ministerial officer who actually committed the act which constitutes the trespass, will be held justified by the warrant. As in the case of *Morgan* vs *Hughes*, (2 *Term Rep.* 225,) where the plaintiff having been apprehended and imprisoned by a Constable under a warrant from a Justice for a felony, when there had been no information or charge against him, it was decided that the Justice alone had committed the false imprisonment, and was liable therefor in trespass ; and that the Constable being bound to execute the warrant of a Justice having competent jurisdiction, the false imprisonment could not be said to be his ; and so in the case of *Case* vs *Shepherd* in the Supreme Court of New York, (1 *Johnson's Cases,* 27,) where the plaintiff who had been indicted for a forcible entry and detainer before the defendant, a Justice of the Peace, having jurisdiction of the case, after pleading to the indictment, obtained a *certiorari* from the Supreme Court, which he delivered to the defendant, who, nevertheless, proceeded to a trial of the case, and upon the plaintiffs being found guilty, issued a warrant of restitution ; for acts done, in the execution of which warrant by the Sheriff, the action of trespass *quare clausum fregit* was brought against the Justice. The Court decided that the *certiorari* superseded the power of the Justice and rendered the subsequent proceedings before him *coram non judice* and void; and that having proceeded after his power was taken away, he became a trespasser, and was liable as such. Nothing was said in that case about the liability of the Sheriff. But according to the doctrine maintained in *Morgan* vs *Hughes*, and upon the principle decided by the Supreme Court of New York, and also by this Court, that "a ministerial officer is protected in the execution of process issued by a Court or officer having jurisdiction of the subject matter and of the process, if it be regular on its face and does not disclose a want of jurisdiction," it may be assumed that the Sheriff who executed the warrant of restitution would not have been held liable to the action.

mission and has qualified as a Justice of the Peace, though such person be not, *de jure,* a Justice, & could not himself justify the issuing the execution as such.

RODMAN
*vs*
HARCOURT, &c.

The principle here referred to was declared by this Court in the case of *Jarman* vs *Patterson*, (7 *Mon.* 650,) and by the Supreme Court of New York in the case of *Beach* vs *Furman*, (9 *Johnson's Rep.* 229,) and is believed to be a well settled rule of law in this State ; and in the case of *Reed, &c.* vs *Rice*, (2 *J. J. Marshall*, 46,) it was decided, that persons called on by an officer to aid in the execution of a search warrant, and who did so in good faith, were not liable as trespassers though the warrant itself was illegal on its face, and therefore furnished no protection to the officer. It was said also by this Court in the case of the *Jefferson Justices* vs *Clark*, (1 *Mon.* 86,) that it had been frequently decided, that the acts of officers, *de facto*, are not void, the office in question being that of Justice of the Peace. In the case of *McInstry* vs *Farmer*, (9 *Johnson's Rep.* 135,) which was in the nature of an appeal from a Justice's Court, the proceedings before the Justice being alledged to be *coram non judice*, because, as it was said, he was a Priest, which was denied in the return to the *certiorari.* The Court said the acts of officers, *de facto*, are often valid as far as they concern the public and third persons. As the Court assumed that the Justice acted under a regular commission, what was said in regard to the acts of an officer, *de facto*, should be understood as referring to one who comes into office by color of title ; and in that form the principle, that the acts of such an officer are valid when they concern the public or third persons having an interest in the act done, was declared and acted on in the case of the *People* vs *Collins*, (7 *Johnson's Rep.* 263,) where it was also said, that a mere ministerial officer had no right to decide on the acts of such officer, *de facto*, (coming in by color of title,) or to adjudge them to be null. This last case related to the refusal of a town Clerk to record a report of Commissioners because one of them had not taken the oath, &c.

In the case of *Keiser, &c. Commissioners* vs *McKissan*, (2 *Rawle*, 139,) the plaintiffs, suing for the benefit of the public, were allowed to maintain the action, though it was objected, that they had not taken the oath , &c; and in *Kidde* vs *the County of Bedford*, (7 *Sergeant & Rowle*, 386,)

the plaintiff, suing for his own benefit, was defeated in the action because he had not taken the oath. The distinction thus exemplified, and the rule itself as to the extent to which the acts of officers, *de facto*, are held valid, is, in the first of these two cases, (2 *Rawle,* 110,) stated on ancient authority to be, that the act of an officer, *de facto,* where it is for his own benefit is void, because he shall not take advantage of his own want of title which he must be cognizant of : but where it is for the benefit of strangers or the public, who are presumed to be ignorant of such defect of title, it is good : *Cro. Eliz.* 699 ; *King* vs *Lyle,* (*Andrew's Rep.* 163 ;) *Hipsbey* vs *Tuche,* (2 *Levins,* 184.)

Now in this case Harcourt appears to have been exercising the office and authority of a Justice of the Peace, publicly and without any public question of his right to do so. He exercised that office too under a regular commission, and therefore by color of title. The execution under which Carrico acted, was regular on its face, issued by one thus publicly acting as a Justice, under a regular commission to that office ; and neither that writ nor any other part of the proceeding to which it belonged, disclose his want of authority to act under the commission which he had received. But the facts which disqualified him from acting under his commission and render his attempt to do so unconstitutional and therefore illegal, were facts *de hors* the record, as in the case of *Morgan* vs *Hughes;* and the Constable and other strangers not being bound or presumed to know them, ought not to be affected injuriously by them. Upon the authority of the case of the *People* vs *Collins,* it may be at least questionable whether, if he had known then, he would have had a right, or at any rate, whether he would have been bound to judge the acts of Harcourt and decide them null ; and especially after the defendant in the execution, (plaintiff in this action,) had, by submitting to have his case tried and adjudged by him, apparently acknowledged his authority. Upon these grounds, and as the fair result of the authorities relating to the acts of officers, *de facto,* coming in by color of title, and to the duty of ministerial officers acting under process apparently void, and the protection

afforded to them by such process, we think the replication presents an insufficient answer to the plea of Carrico, and that Carrico's demurrer was properly sustained. We only add in regard to Harcourt's liability, that although until he is publicly questioned for the unconstitutional exercise of power, his acts, done under color of official title and authority, may perhaps be valid as between third persons, and although as was intimated in the case of *McInstry* vs *Tanner*, his authority to issue the warrant and render the judgment against the present plaintiff might not have been questionable on an appeal from that judgment which would have prevented a contest between third persons, yet we think the lawfulness of his title is properly subject to be questioned, and may be directly put in issue when in an action against himself he sets up that title as sufficient to protect him from liability. If from a regard to public convenience and to justice between individuals, the law will, to some extent, sustain the direct consequences of his acts, the same considerations do not apply to make them efficacious for his own protection, and the law will not so far encourage a violation of the constitution as to pronounce them so. We do not however decide to what extent his acts, as a Justice, may be deemed valid. We decide on the one hand, that as his acts, now in question, were without the general powers and jurisdiction of a Justice of the Peace, and were done by him under color of a regular commission to that office, they are sufficient, though they should be declared void as to all other purposes, to protect the Constable who, in good faith, obeyed his precept, regular on its face, and issued under such color of title: but on the other hand, that if these acts be not altogether void, as they were done by Harcourt without valid authority and against an express mandate of the constitution, and as he must be deemed to have been cognizant both of the facts and the law which withheld or annulled his authority to act, they are, so far as he is concerned, illegal, not deriving any aid from a mere color of authority in himself, which, as he knew he had none, is unavailable for any advantage to himself, either in defence or in ac-

tion, and stand, therefore, as naked illegal acts, done without authority and against law.

Wherefore, the judgment against the plaintiff in favor of Carrico is affirmed, but the judgment in favor of Harcourt is reversed and the cause remanded, with directions to overrule Harcourt's demurrer to the plaintiff's replication to his plea, and for further proceedings.

*Harlan & Craddock* for plaintiff: *Owsley & Goodloe* for defendants.