### J. P. MATTHEWS *v.* THE BOARD OF SUPERVISORS OF COPIAH COUNTY.

OFFICER.  *De facto.*  *Not entitled to emoluments.*

A person elected, who takes the office of sheriff, to which he is ineligible, under § 16, art. 4, Constitution, because a defaulter, cannot maintain assumpsit against the county for amounts allowed him by the Circuit Court for employing bailiffs and victualling prisoners, which the board of supervisors refuses to pay.

ERROR to the Circuit Court of Copiah County.

Hon. S. S. CALHOON, Judge.

*Harris & George*, for the plaintiff in error.

The case rests on one question, whether the default stated and admitted is a bar to the plaintiff's action?

We submit to the court that the State, and its instrumentality, the county, having allowed the plaintiff elected by the people to occupy the office for his full term, and perform all its laborious and expensive duties, under a commission issued to him, are estopped now to deny the title of the incumbent, on this question of remuneration. The doctrine of estoppel applies to a State as to an individual. *Vermont* v. *Society,* 2 Paine U. S. C. C. 546; Herman on Estoppel, 243.

The rule seems to be well settled that, where the actual incumbent who has rendered the services presents an authenticated claim for such services, those charged by law with the payment of salary or fees cannot refuse payment on the ground that the incumbent has no title to the office to which the salary or fees are attached. *Turner* v. *Melony,* 13 Cal. 621; *Satterly* v. *San Francisco,* 23 Cal. 314; *People* v. *Collins,*

7 Johns. 549; *Leach* v. *Casserly*, 23 Ind. 449; *Queen* v. *Green*, 12 Ad. & Ell. 702 ; *Queen* v. *Cambridge*, 12 Ad. & Ell. 166 ; 45 Mo. 452 ; *Pearce* v. *Hawkins*, 2 Swan, 87.

In *Wayne County* v. *Benoit*, 20 Mich. 176, 181, 182, this subject was much discussed *pro* and *con*, the majority of a very able bench deciding that the incumbent unchallenged must be paid for services rendered. Campbell, C. J., speaking of the rule that the officer in any suit, where he relies upon his title, must show it, said, it was limited to .cases where the incumbent sought to justify a trespass or wrong. The majority decide that the county, which has paid money as salary to an incumbent before proceedings to oust him, is not liable to the rightful officer for the salary so paid, upon the ground that the incumbent might lawfully claim the salary for the time he served.

The established doctrine in this State is that officers' salary does not rest in contract, and is not property, unless actually earned. *Swann* v. *Buck*, 40 Miss. 268.

The result in the case at bar in the lower court is error, if common sense be the test, according to the analogies of the law, and the spirit of the best-considered adjudged cases.

*W. P. Harris*, on the same side, argued the case orally.

*Tim. E. Cooper*, for the defendant in error.

The title of the officer to the office, where, in case of conflicting claims, he brings *mandamus* for his salary, is not a subject of inquiry. High on Extraordinary Remedies, §§ 49–103. But if there be no other claimant to the office, it seems that, even in *mandamus*, the court might inquire whether the appointment or election is absolutely void. *State* v. *Gamble*, 13 Fla. 9. At all events, in an ordinary action of assumpsit, he must sustain his right to recover by such proof as other suitors are required to make. He sues for fees due him as *sheriff*, and must maintain his title to the office, for, if he was not sheriff, the claim sued on is not due to him. The plaintiff must prove all the material allegations of his declaration. 1 Greenl. Evid. § 57.

This is not such a collateral proceeding as that the right to the office cannot be tried. *Patterson* v. *Miller*, 2 Met. (Ky.) 492. The claim being *grounded upon* and *flowing out of* the

office, his title is put in question.   *Kimball* v. *Alcorn*, 45 Miss. 158.

The proposition that the title to the office cannot be inquired into after the expiration of the term is not insisted upon in this court, except as an *estoppel* against the State and county ; but counsel for the plaintiff in error urge, that by the election of the plaintiff, by commissioning him as sheriff, and by permitting him to exercise the functions of his office during the term for which he was elected, the State and county are estopped to deny that the plaintiff was sheriff.   Now, if the election and commission of the plaintiff, being *acts done*, would not estop the State and county, it is difficult to see how the mere *passive* acquiescence in the plaintiff's usurpation can operate as an estoppel.   But, if the plaintiff in error be correct, and the State is estopped, then one, though ineligible under the Constitution, may, by election and commission, get into office, and defend his possession and right of possession by setting up his election and commission as an estoppel against the State ; for, if he can invoke the doctrine of estoppel in an action of assumpsit by himself against the State, there is no reason why he may not invoke it in an action of *quo warranto* by the *State* against *him.*

The authority cited by counsel from Herman on Estoppel, and the authority there cited, 2 Paine Ct. C. 545, will be found, upon examination, to be a case in which the State had made a *grant* of *land.*

The plaintiff suing for a right flowing from his office must show a legal title.   45 Miss. 151.   A *de facto* officer cannot recover the fees incident to the office.   *Neale* v. *The Overseers,* 5 Watts, 538 ; *Patterson* v. *Miller,* 2 Met. (Ky.) 492 ; *Pearce* v. *Hawkins,* 2 Swan, 87 ; *People* v. *Tieman,* 30 Barb. 193 ; *Kimball* v. *Alcorn,* 45 Miss. 151 ; 28 Cal. 21 ; *Riddle* v. *Bedford,* 7 Serg. & R. 386.

The attention of the court is especially called to the dissenting opinion of Cooley, J., in *Wayne County* v. *Benoit,* 20 Mich. 176.   The authorities are there ably reviewed.   The question there was upon the liability of the county to pay the salary to the *de jure* officer, having already paid to the *de facto* treasurer. Christiancy, J., concurs in the opinion of Campbell, C. J.,

on the ground that payment was made to the *de facto* officer *before* he was evicted. The courts of this State have gone farther, perhaps, in restricting the power of officers holding in violation of a constitutional prohibition than those of any other State. The distinction is clearly drawn between the acts of *de facto* officers, where the appointment was irregular and voidable, and those in which it is absolutely void, as by constitutional prohibition. *Shelby* v. *Alcorn*, 36 Miss. 273.

Matthews accepted the office with full knowledge of the fact that he was constitutionally ineligible, and cannot complain of bad faith in the State or county in accepting his services, and defending against the payment of his salary or fees. He was the veriest intruder into the office ; there can be no color of right which arises from an act forbidden by the Constitution. See Constitution, art. 4, § 16.

*George E. Harris*, Attorney-General, for the county, argued the case orally.

Chalmers, J., delivered the opinion of the court.

J. P. Matthews, late sheriff of Copiah County, brought his action of assumpsit against the county to recover the amounts which had been approved by the district attorney, and allowed by the Circuit Court as his official fees, as jailer, for victualling prisoners, and for the services of extra bailiffs in attending on a term of the Circuit Court. The board of supervisors refused to pay the accounts, and hence this suit.

The defence was that the plaintiff, during his entire term of office, as well as at the time of the institution of the suit and the filing of the plea, was a defaulter for public moneys by him received and unaccounted for during a preceding term in the same office, which had been held by him. In other words, the plaintiff had been sheriff of the county from 1872 to 1st January, 1874, and during this term had defaulted to the State and county for small amounts. He was, notwithstanding this default, re-elected to a term beginning 1st of January, 1874, and ending 1st of January, 1876. He served out this second term, without objection, and during his second incumbency the accounts sued on were

allowed him, as jail fees and for services of bailiffs, the one amounting to $694, and the other to $1,268. The claim as jailer was not for the value of the provisions furnished, but for the statutory *per diem* fees. This suit was brought after the expiration of his second term. Can it be maintained ?

Sect. 16 of art. 4 of the State Constitution declares that " No person liable for public moneys unaccounted for, shall be eligible to a seat in either house of the legislature, or to any office of profit or trust, until he shall have accounted for and paid over all sums for which he may have been liable." It being admitted that the plaintiff was a defaulter during his entire second term, as well as at the institution of this suit, can he maintain an action against the State or county to recover fees due him *ex virtute officii ?*

It is earnestly insisted that he can, because, having exercised the functions of the office unchallenged during the term, and having discharged its duties and incurred its burdens, he should not be denied its emoluments. Upon principles of natural equity and justice, nothing can be more reasonable than such a demand, if his claims are just and legal, as to which there is some dispute. It is impossible, however, to see how his demand can be successfully asserted in a court of law. A confessed defaulter, he was constitutionally ineligible to the office, and was a mere unlawful occupant during his entire term, suffered to exercise the functions of the sheriffalty by the permissive indulgence of the authorities and of his fellow-citizens, any one of whom under our statutes might have ejected him by proceedings of *quo warranto.* Under such circumstances he was a simple volunteer, offering his services to the State, but entitled to claim no compensation therefor. As to third parties his acts were valid, but as to the State he was a wrong-doer ; and his conduct loses nothing of this character, because it was permitted to pass unchallenged during the term.

It will be observed that we are not called upon to consider whether he is liable to every man whose property or whose person he seized under legal process during his incumbency, though the authorities are neither few nor obscure which would hold him in every such case to have been a trespasser,

and would mulct him in damages. *Rodman* v. *Harcourt*, 4 B. Mon. 229 ; *Patterson* v. *Miller*, 2 Met. (Ky.) 493 ; *Pearce* v. *Hawkins*, 2 Swan (Tenn.), 87 ; *Fowler* v. *Bebee*, 9 Mass. 234 ; *Green* v. *Burke*, 23 Wend. 492. Neither are we considering whether a private person for whom he had performed official duties can resist the payment to him of the lawful fees and charges therefor ; although this question also has been expressly decided in the affirmative. *Riddle* v. *County of Bedford*, 7 Serg. & R. 386, and authorities there cited.

The question at issue here is whether he can assert against the State or against a county, which is a constituent part of the State, a demand for official fees, which he claims to have earned by a violation of her Constitution.

If he can do so, there is an end at once of all distinction between a *de jure* and a *de facto* officer, since it is impossible to perceive how the latter, while undisturbed by *quo warranto*, occupies a position at all inferior to the former.

The acts of both are alike valid, both would be alike protected from the assaults of private persons, and each would have an equal claim upon the State for compensation. Such a construction of the law would be a direct encouragement to usurpation of office. The intruder or the incumbent wrongfully holding over would be liable, indeed, to be ejected at the end of a long and costly litigation, but in the mean time he would have grown rich by the fees and salary which he would have extorted from the State, whose laws he had violated in holding the position.

We have found no case where a *de facto* officer has been allowed to recover fees or salary from a State or municipality, although it has been repeatedly decided that, upon *mandamus* to a ministerial officer to compel the performance of a purely ministerial duty, such as the issuance of a warrant, the title of the officer suing out the writ could not be inquired into ; but this rests upon a wholly different principle, and is based upon the rules of pleading appertaining to the procedure by *mandamus*. Even in such cases it is said that the title of the relator will be inquired into, if there be but one claimant to the office. High on Extraordinary Remedies, § 105.

In the case in Michigan, mainly relied on by counsel for the appellant, the question at issue was whether the *de jure* officer, who had been kept out by the *de facto* incumbent, could recover compensation for the period during which he was so kept out, it appearing that the *de facto* officer had received the salary during such period.    Campbell, C. J., thought that he could not, and rested his opinion upon the argument that the *de facto* officer could have maintained a suit for the salary accruing during his incumbency.    Cooley, J., thought otherwise, and, in an opinion of unusual force and ability, demonstrated, we think, the unsoundness of the reasoning of the Chief Justice.    Christiancy, J., concurred with the Chief Justice, but upon a ground which leaves it impossible to say what his opinion was upon the main point at issue.    *Wayne County* v. *Benoit*, 20 Mich. 176.

It seems to us self-evident that whenever a public officer propounds against a State, county or city a claim for compensation for official services, he puts his title to the office in issue, and must stand or fall by the result of that inquiry.    *Kimball* v. *Alcorn*, 45 Miss. 151 ; *People* v. *Tieman*, 30 Barb. 193 ; *People* v. *Hopson*, 1 Den. 574 ; *Lightly* v. *Clouston*, 1 Taunt. 112.                                  *Judgment affirmed.*