## KIMBALL, RAYMOND & CO. *v.* ALCORN & FISHER et al.

## JAMES LYNCH, Secretary of State, etc., *v.* KIMBALL, RAYMOND & CO.

1. PUBLIC PRINTER—HOW ELECTED—GOVERNOR CANNOT APPOINT TO FILL VACANCY DURING SESSION OF THE LEGISLATURE.—The nomination by the governor of a person to be public printer, and the consent of the senate thereto, during the session of the legislature, are void acts, because the mode of filling that office is regulated by the Code of 1857, which provides for election by the joint convention of the two houses of the legislature.

2. SAME—SAME—SAME.—The election of Fisher & Kimball by the joint convention of the two houses of the legislature in 1870, constituted them officers *de jure*, and upon their resignation during the session of the legislature, the legal mode of appointing their successors to fill the vacancy was election by the two houses, as prescribed by law.

3. OFFICER DE JURE—WHO IS ?—An officer *de jure* is one who is in by virtue of an appointment, or election, according to the forms prescribed by law. He has title, as against the world, and is clothed with the authority and charged with the duty of exercising the functions of his office, and his acts, within the scope of his duty, cannot be questioned by the citizen, or any department of the government.

4. OFFICER DE FACTO—WHO IS ?—An officer *de facto* is one who comes in by the forms of an election or appointment, but in consequence of some omission, informality or want of qualification, fails to be legally invested. He cannot maintain his possession when called on to show by what title he holds the office. The mere performance of official acts does not make an officer *de facto*, but there must be color of right, by election or appointment, or an acquiescence on the part of the public for a length of time, which would afford strong presumption of colorable-right.

Statement of the case.

5. SAME — SILENCE OF THE GOVERNMENT — EFFECT OF. — The silence of the government is a ratification of the *acts* of a *de facto* officer, but not of his *title*.

6. SAME — DIFFERENCE BETWEEN THE ACTS OF AN OFFICER DE FACTO AND ONE DE JURE. — The difference in the consequences of acts of an officer *de facto* and one *de jure*, is that what is done by the latter in the line of duty cannot be controverted by any individual or department of the government, while those of the former are valid, as they affect third persons or the public, and cannot be questioned in a collateral proceeding to which he is not a party. He holds by the sufferance of the state, whose silence is construed into recognition and ratification of his acts, and private persons are estopped from controverting such acts. The reason of this is public policy. The incumbent has no rights which he can assert for himself, for his assertion of any right for himself puts in question his title.

7. CASE IN JUDGMENT. — Kimball, Raymond & Co. were officers *de facto*, but not *de jure*.

APPEAL from chancery court of Hinds county, first district. CABANISS, Chancellor.

WRIT of error to circuit court, Hinds county. BROWN, J.

These two cases were submitted together. The bill of Kimball, Raymond & Co., exhibited in the chancery court of Hinds county, was dismissed on final hearing, on bill and answer, and they appealed, and the *mandamus* they prayed was granted by the circuit court of Hinds, and James Lynch, secretary of state, sued out a writ of error. The two cases involved substantially the same question, and were considered and decided by the court as one case. The facts of the cases are stated in the opinion of the court, and need no repetition here. The questions involved were elaborately argued by counsel.

*W. P. Harris* and *William Yerger*, for Kimball, Raymond & Co.

*G. L. Potter*, for Acorn & Fisher, and for James Lynch, secretary of state.

The arguments of counsel are too long for insertion here, and the reporter is unwilling to attempt to abridge them, lest he fail to present them fairly. Therefore, they are omitted.

SIMRALL, J.:

These two cases were argued in vacation, on the agreement, as stated by counsel, that the parties would immediately conform to whatever judgment the court might then declare, that it would pronounce at this term.

Counsel waived any points that might arise on the pleadings, and addressed themselves exclusively to the main question. On account of the important public interest connected with the litigation, the pressing necessity that the printing of the new Code, the pamphlet acts of the legislature, and other public matter should not be further delayed, the court considered the subjects exclusively upon their merits, and stated concisely the premises upon which it reached the conclusion.

The facts briefly are these: The legislature, in joint convention of the two houses, on the —————— day of ——————, 1870, elected Fisher & Kimball state printers, who entered upon the office, and for a short time performed its duties. Shortly afterward they resigned. Thereupon, in May, 1870, the governor nominated to the senate, Kimball, Raymond & Co., who were confirmed. They continued to discharge the duties of the office until June, 1871, when they were removed by the governor, and Alcorn & Fisher were appointed in their stead.

Kimball, Raymond & Co., claiming to be rightful public printers, notwithstanding the act of the governor in displacing them and appointing successors, filed a bill in chancery, enjoining Alcorn & Fisher from intermeddling with the public printing, and James Lynch, secretary of state, from furnishing to them official copy for the new Code and other public documents. By supplemental bill, they also enjoined Compton from attempting to perform a contract to do the work, made with the governor, on the ground, that, in the circumstances, the governor had no power to make such a contract, they being able, willing and prepared to do the work.

They also proceeded by *mandamus* against James Lynch, secretary, etc., to compel him to deliver to them copies of the chapters of the new Code, and other matter, so that they might officially print them.

A careful inspection of the constitution will make it manifest, that all its articles and provisions did not go into effect practically on its adoption. It looked to a temporary supply of certain officers by appointment of the governor and senate; while the permanent mode of filling these offices was an election by the people. For a time these offices would be held, for an indefinite and uncertain term; while, by another provision, the term of all officers must be for a fixed period. Section 6 of article 12 is "temporary," and will pass away altogether when the officers therein named shall have been inducted into their several places by a popular election. When that is done, the provisional feature of the constitution will have accomplished its purpose and spent its force. The permanent provision, as respects the term, is section 29 of article 1. It comprehends all officers, and must be for a definite period, instead of for life or during good behavior. Supervisors' case, 44 Miss. While the 6th section of 12th article made provision for the appointment by the governor and senate, of the officers therein named, none was made for the removal of the incompetent and unfaithful; nor was any made for filling vacancies.

Municipal officers of cities and towns were, perhaps, not included in the section, and there was urgent necessity that these should be filled. In the absence of legislation, a doubt had been started whether the governor, for any cause, could remove or fill a vacancy; for the next section (the 7th) declared that, for cases not provided for in the constitution, the legislature may determine the mode of filling vacancies. There was great need, therefore, for legislation, which was supplied by the act of 20th April, 1870.

This statute, like all others, should be construed with reference to the exigency which called it forth, the evils

that existed, and the remedy proposed by the law. The first clause empowers the governor and senate to appoint; the second clause authorizes the governor to remove where, by the terms of the act and by the constitution, he cannot appoint. The characteristic by which to determine what officers are meant and embraced in the 6th section of the 12th article, is furnished by the last clause of the section, to wit, those "whose terms shall continue until the legislature shall provide by law for an election." Under the permanent system of government, as organized in and by the constitution, they are "elective" by the people; but, until the election shall be ordered, the governor shall appoint. Such was certainly the mind of the legislature, for, by the second section of the act of 1870, all persons appointed under "it" shall hold "until the legislature shall provide for an election" (that is, until successors by "election" shall take their places), "unless sooner removed by the governor." The term of these appointees was uncertain; it would not be measured by the calendar. Though appointed by the governor and senate, it might properly be said that they hold at the pleasure or will of the legislature.

It is manifest that the public printer is not included in the act of 1870. That statute had primary reference to the class of officers named in the 6th section of the 12th article, and to corporation officers of cities and towns. The second section fixes the duration of the terms of those appointed under the first section to "an election by the people." Now, the public printer, as an officer, is unknown to the constitution. The office was created by statutes, as also the mode of filling it, and its duties. Its term is for a definite period, and it is not filled by popular election. This office does not come within the letter or reason of the statute of 1870.

It was created by the act of 1857. Rev. Code, 114. The mode of filling it is by joint election of the two houses of the legislature, or, if a vacancy happen in the recess, by appointment of the governor. There are no words in the

act of 1870, expressly repealing this statute. And it must stand unless repugnant to and inconsistent with the latter statute. The last statute can have full effect, be remedial of all the mischiefs that it was designed to cure, without trenching upon the former. It is our plain duty to give effect to both, if they are not inconsistent and irreconcilable. A repeal by implication is not favored. Dwarris, 674 ; McAfee v. Southern R. R. Co., 36 Miss. 669.

It follows, therefore, that the mode of appointing a successor to Fisher & Kimball, upon their resignation of the office of public printer (the legislature then being in session), was an election, by a joint convention of the two houses, as prescribed by the statute of 1857. The appointment of Kimball, Raymond & Co., by the governor, by and with the advice and consent of the senate, did not confer the office upon them, because they were not inducted into it in the mode prescribed by law, being without warrant of law, it was as if, " *coram non judice,*" void. In the People v. Fitch, 1 Cal. 536, under a law very similar to ours, it was held, that an appointment to office by the governor, during the session of the legislature, was void. In Patterson v. Miller, 2 Metc. (Ky.) 494, one who is personally disqualified is not an officer *de jure* although elected, bond executed, and oath taken, in strict conformity to law. Johnson v. Wilson et al., 2 N. H. 204, arose under a statute, making it the duty of the " selectmen " to appoint a collector of taxes, or to fill a vacancy, in case the town meeting failed to do so. The vacancy had existed but for a single day, when the selectmen filled it. The court held, that the town ought to have a fair opportunity to make the appointment, and in this case was not in default. The appointment therefore by the selectmen was void ; void for want of authority to make it.

But it was argued that, although the appointment of Kimball, Raymond & Co. was irregular, either house of the legislature and governor recognized them by various acts, and that these acts, especially on the part of the two

houses, should be considered as equivalent to an election. The knowledge, it is said, by the legislature, that they were performing the duties of the state printer, with a right in the legislature to elect, but failing so to do, was tantamount to an election. An officer *de jure* is one who is in according to the mode and in the forms prescribed by law. The authority that elects or appoints must not only have the power, but must exercise it in the mode defined. Such officer has a legal title, and is clothed with all the rights of the place. His acts within the line of duty cannot be questioned by the citizen or any department of the government. McGregor v. Balch, 14 Vt. 428. His title is perfect against the world.

The argument, in favor of title by ratification, is founded (as we conceive) in not keeping in the mind the difference between the *de jure*, and *de facto* officer. It is a settled and salutary principle in English and American law, that the acts of the latter are valid, in so far as they affect the public or third persons who have an interest in them. Cooper v. Moore, 44 Miss. But the principle is otherwise when the act is for the benefit of the officer; he shall not take advantage of his want of title of which he must be cognizant. People v. Collins, 7 Johns.; McInstry v. Tanner, 9 ib. 135; Pearce v. Hawkins, 2 Swan (Tenn.), 135; Venable & Co. v. Curd & White, 2 Head (Tenn.), 586. The sufferance of the state, and silence of the government is construed to be a ratification of his acts, but not of his title.

If greater effect than this were given to it, then the forbearance of the state for a length of time to proceed by *quo warranto* would be a bar to the writ, or a good answer to it. In the case cited from 2 N. H. (*supra*), the same argument of ratification by subsequent act was pressed. It was claimed, that the town had, by a vote, ratified the act of the selectmen. But the court held, that the original act being void, it was incapable of confirmation. What was done by the town was not a "new appointment," nor was the collector under such new appointment sworn into

office.  The principle of the decision is, that nothing short of a new election by the town would give legal title.

Kimball, Raymond & Co. can refer to no acts of recognition, by the state or any department of the government, which will be of avail, except a new election or appointment under the law.

But, inasmuch as Kimball, Raymond & Co. discharged the duties incident to the office, referring their right to the claim arising out of their apportionment, they became and were officers *de facto*, and all things done by them, in so far as the public or third persons have an interest in them, are valid, as much so as if they were in by regular and lawful investiture.  To constitute an officer *de facto* there must be color of right by election or appointment, or an acquiescence by the public, for a length of time, which would afford strong presumption of colorable right.  The incumbent himself has no privileges and is shielded from no responsibility. If he attempts to enforce a right grounded upon and flowing out of his office, his title is put in question and he must show a legal right.  So where he justifies it, there is much and respectable authority to the point, that it is not enough to show that he is in office by an appointment which is irregular, or that the state has for a long time acquiesced, but he must prove a legal right.  Fetterman v. Hopkins, 5 Watts, 539 ; People v. Collins, 7 Johns. ; McInstry v. Tanner, 9 ib. 135 ; Pierce v. Hawkins, 2 Swan (Tenn.), 135 ; Venable & Co. v. Curd & White, 2 Head (Tenn.), 586 ; Paterson v. Miller, 2 Metc. (Ky.) 494 ; People v. Tierman, 30 Barb.  In the case, in 30 Barb., *supra*, Tierman sought by *mandamus* to compel the comptroller of the city of New York to sign a warrant for his salary.  It was denied because he was not in office by legal authority.  A *de facto* officer can maintain no such suit.

The case in 2 Metc. *supra*, was that of a sheriff, sued in trespass for the seizure and sale of property.  He was duly elected, had given bond and taken the oath, but the law required that he should, when elected, be a resident of the

county. Not being such resident he was not competent to take the office; being in by color of title he was not justified in the seizure, etc.

When the law under which a county office is held is unconstitutional, a party inducted into it, who discharges its duties, cannot recover a salary. Meayer v. County of Stover, 2 Nev. 244.

It was not supposed by counsel, at the argument, that the statute of May 13, 1871, had any influence on this controversy. As to the mode of election and filling vacancies, it is substantially a re-enactment of the law of 1857. The 4th section is, "Vacancies in the office of public printer * * * shall be filled in the same manner (election by convention of the two houses) for the unexpired term, and in vacation of the legislature by the governor, until such session." Primarily, the bestowment of the office is with the legislature; in vacation it is with the governor. If the vacancy occur during the session it must be filled by election of that body. If the vacancy is filled by the governor in the recess, it is "until such session" of the legislature. We think it clear that the governor cannot fill the office, or nominate to the senate during the session. The language in reference to filling vacancies in the recess is, perhaps, broader than under the law of 1857. Under this statute the words were, "if the vacancy shall happen during the recess," etc.; under that of 1871 the language is, vacancies "in vacation of legislature (shall be filled) by the governor" — omitting the words, "shall happen during the recess." So that perhaps a proper interpretation of the words of the act would authorize the governor to fill the office, if he found it vacant in the recess, whether the vacancy occurred during the session or after the adjournment. Perhaps, too, a liberal interpretation of the statute of 1857, looking rather to its spirit and purpose than its letter, would have authorized the governor to fill in vacation a vacancy which happened during the session, if the legislature failed to elect, on the idea that the vacancy hap-

pened every day the office was unfilled. The duties of public printer do not terminate with the session of the legislature. Many of them (of the most important too) must necessarily be performed in the vacation. The law contemplates that there shall always be an incumbent. That construction would be narrow and not commensurate with the demands and necessities of the public interests (and should be avoided unless compelled by the terms of the statute) which at any time, or under any circumstances, would not find competent authority to fill a vacancy.

A vacancy might occur by death, or other casualty, so shortly before the adjournment of the legislature that the body might adjourn without notice of it. If the governor could not appoint, great public inconvenience would ensue; yet such a vacancy was as complete during the session as if it had happened the first day or the first week.

But upon this point it is not necessary that we should express an opinion, and we do not therefore commit ourselves upon it.

Wherefore the decree of the chancellor is affirmed, and the judgment of the circuit court making the *mandamus* perpetual is reversed, and the proceedings are dismissed.