# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, NOVEMBER TERM, 1869, IN THE FIFTY-FOURTH
YEAR OF THE STATE.

---o---

DOUGLASS *v.* THE STATE, on the Relation of WRIGHT.

OFFICE.— *Vacancy.— County Auditor.—Statute Construed.*—Where a vacancy
in the office of county auditor is filled by appointment, and a successor is
elected at the next general election, such successor is entitled, by section 4
of the act of May 13th, 1852 (1 G. & H. 671), to take the office as soon af-
ter his election as he shall have qualified.

SAME.— *Usurpation.—Damages.—Measure of.*—If such appointee refuses to
surrender the office upon the demand of such qualified successor, the latter
is entitled to recover from the former the gross emoluments of the office re-
ceived by him while so unlawfully withholding the office.

SAME.—At the October election, 1863, A. was elected auditor of a certain
county, was commissioned, and, having duly qualified, went into said office
November 1st, 1863. He resigned in December, 1866, and B. was appointed
by the board of county commissioners to fill the vacancy. At the October
election, 1867, C. was elected to the office, and was subsequently commis-
sioned for four years from the 1st of November, 1867; and, having duly
qualified, on the 11th of November, 1867, he demanded of B. possession of
the office, its records, &c., which B. refused to surrender, claiming the right
to hold till the first Monday of March, 1868. Information under the stat-
ute, on the relation of C. against B., pending which, on the first Monday of
March, 1868, B. surrendered to C.

*Held,* that C. was entitled to the office when he so demanded possession of it,
and to receive its fees and emoluments from that date.

*Held,* also, that B. was not entitled to retain from the gross emoluments of
the office for the time he so unlawfully held it against C. the amount paid
out for necessary clerk hire for discharging the duties of the office for that
period.

*Held*, also, that section 1 of the act of May 31st, 1852 (1 G. & H. 122), so far
   as it fixed the commencement of the county auditor's term of office on the
   first Monday of March next ensuing his election, was intended to apply to
   a regular succession of terms by election, and was repealed by implication
   by the act of March 3d, 1855 (Acts 1855, p. 52), providing, that the term
   of office of the auditor and certain other officers "shall commence on the
   first Monday of the month of November, immediately following the general
   October elections, and that any of the above named officers to be elected
   hereafter shall hold their offices until the first Monday of November afore-
   said, according to their respective terms."

*Held*, also, that, in such a case as this, said act of March 3d, 1855, is not in
   conflict with section 2 of article 6 of the State Constitution. *Howard* v.
   *The State*, 10 Ind. 99, explained.

APPEAL from the Harrison Circuit Court.

This was an information under the statute, in the name
of the State, on the relation of Samuel J. Wright, against
Benjamin P. Douglass, filed on the 16th day of November,
1867. It was alleged in the information, that Wright, the
relator, at the October election, in the year 1867, was duly
elected to the office of Auditor of Harrison county, Indiana,
that he was subsequently duly commissioned as such, by
the Governor, for the term of four years from the first day
of November, 1867, and until his successor should be elect-
ed and qualified; that he executed a bond in the sum of
two thousand dollars, with sureties, which was accepted and
approved by the board of commissioners of said county;
that he took the proper oath of office, and on the 11th of
November, 1867, demanded the possession of the office, and
the records, books, and papers belonging thereto, of said
Douglass, who was then in possession thereof; that said
Douglass refused to deliver or surrender said office to the
relator, but continued unlawfully to usurp, hold, and exer-
cise the same, to the damage of the relator in the sum of
fifteen hundred dollars.

A demurrer filed to the information was overruled. An
issue was then formed by the general denial, which, by
agreement of the parties, was tried by the court.

There was a finding for the relator, and judgment for

six hundred dollars in damages. A motion for a new trial was made and overruled.

The material facts presented in the case are these: At the October election, 1863, one James S. Miller was elected auditor of said county, for the term of four years from the first day of November of the same year. He was so' commissioned, and, having duly qualified, went into office on said 1st day of November, 1863. On the 9th of December, 1866, Miller resigned the office, and on the same day Douglass, the appellant, was appointed by the board of commissioners to fill the vacancy and serve as auditor until a successor should be elected and qualified. Wright, the relator, was elected such successor at the October election, 1867. He was subsequently commissioned for the term of four years from the 1st of November, 1867, and, after having duly qualified, by giving bond with sureties, which was approved by the board of commissioners, and taking the proper oath of office, on the 11th of November, 1867, he demanded possession of the office and of all the records, books, and papers, belonging thereto, of the appellant, who refused to surrender the same, claiming that he was entitled under his appointment to hold the office until the first Monday of March, 1868. Douglass, accordingly, continued to hold the office and exercise the· franchises thereof until the first Monday in March, 1868, at which time, pending this suit, he surrendered to Wright.

It was agreed by the parties in the court below, that the emoluments of the office from November 11th, 1867, to the first Monday in March, 1868, were six hundred dollars; "and the amount of necessary clerk hire, paid out by said Douglass, for discharging the duties of said office from November 12th, 1867, to the first Monday in March, 1868, was $266.66; and that defendant will be entitled to a deduction of that amount, if the court shall hold that such a deduction is admissible in law as a counter-claim."

ELLIOTT, J.—The questions presented in the case, and discussed by counsel, are,

First. Was Wright entitled to the office before the first Monday in March, 1868?

Second. If Wright was entitled to the office on the 11th of November, 1867, when he demanded possession of it from Douglass, was the latter entitled to retain from the gross emoluments thereof for the time he unlawfully held the office against Wright, the amount paid out for clerk hire for discharging the duties thereof during the same period?

The appellant bases his claim to hold the office under the appointment of the board of commissioners, on the first section of the act of May 31st, 1852, in relation to county auditors (1 G. & H. 122), which provides, that " the county auditor shall hold his office for the term of four years from the first Monday in March next succeeding his election, and until his successor is elected and qualified."

We do not think that section is applicable to the case before us. Conceding that it was the intention of the legislature by the provision quoted to fix the time of the commencement, as well as the duration of the term of office, yet it seems evident that it was intended to apply only to a regular succession of terms by election.

The appellant was appointed auditor, upon the resignation of Miller, under section four of the act touching vacancies in office, and filling the same by appointment, approved May 13th, 1852 (1 G. & H. 671), which provides, that "the board of county commissioners shall fill all other vacancies in county and township offices, except," &c., "and such appointment shall expire when a successor is elected and qualified, who shall be elected at the next general or township election, as the case may be, proper to elect such officers."

It is evident that it was intended by this section that the officer elected should take the office as soon after his election as he should be qualified.

These separate statutes were enacted by the same legis-lature, and within a few days of each other, and, if it may be fairly done, should be so construed as to be consistent with each other. The construction which we have given to them seems to us to be the only proper one, and it makes no conflict between them. But if we were mistaken in the true meaning of the first section of the act of May 31st, 1852, still we would be correct in the conclusion that Wright was entitled to the office at the time he demanded it of Douglass, November 11th, 1867, for the reason that the section referred to, so far as it fixed the commencement of the auditor's term on the first Monday of March next suc-ceeding his election, was repealed, by implication, by an act approved March 3d, 1855 (Acts 1855, p. 52), fixing the commencement of the terms of certain county officers, &c., the first section of which is as follows: "That the terms of office of the following named county officers, to wit: The sheriff, treasurer, coroner, auditor, recorder, clerk, surveyor, and county commissioners, shall commence on the first Monday of the month of November, immediately follow-ing the general October elections, and that any of the above-named officers to be elected hereafter shall hold their offices until the first Monday of November aforesaid, according to their respective terms." But it is said, that this act is in con-flict with sec. 2, art. 6, of the State Constitution, and is therefore void, and that it was so held in *Howard* v. *The State*, 10 Ind. 99. In that case, Stembell was elected treas-urer of Benton county, in October, 1854, for the term of two years, commencing on the 15th of August, 1855, and terminating on the 15th of August, 1857. Vawter was elected to the same office at the October election, 1856. He was declared duly elected by the board of canvassers of said election, and his election properly certified to the clerk of the circuit court, on the Thursday succeeding the election. Vawter claimed the office from the 15th of August, 1857, the time of the expiration of Stembell's term, by virtue of

his election thereto at the October election next preceding. The clerk, however, refused to make out and transmit a statement of the votes cast for Vawter, to the Secretary of State.    Vawter applied for a mandate to compel him to discharge that duty.    The clerk placed his refusal on the ground that the act of 1855 extended Stembell's term until the 1st of November, 1857, and that his successor could not, therefore, be legally elected, until the October election of that year, as such election would precede the expiration of Stembell's term.    On appeal to this court, it was held, that by section 2 of article 6 of the Constitution, the term of the treasurer is definitely fixed at two years, and that it was not in the power of the legislature either to diminish the term below, or extend it beyond, the period fixed by the Constitution; that, applied to the facts of that case, the act of 1855 affirmatively extended the term of office beyond the limit fixed by the Constitution, and was therefore held invalid.

The same objection, however, is liable to be urged to the act of 1852, in its application to given cases.

In the creation of the office of auditor, before the adoption of the present Constitution, the law fixed the term to commence on the first Monday in March, and made its duration five years,    The elections were then held in August, and in many instances where vacancies occurred by resignations, death, or otherwise, the successors elected came into office soon after the election.    The second section of the sixth article of the Constitution provides for the election of auditors at the time of holding general elections, to hold for the term of four years, and by the tenth section of the schedule, auditors in office at the date of the adoption of the Constitution were authorized to continue in office until the term for which they were respectively elected should expire, provided that no such person should continue in office, after the taking effect of the Constitution, for a longer period than the term of such office prescribed therein. Now, suppose the term of an auditor, that commenced in

August, had less than four years to run after the adoption of the Constitution; the election being changed from August to October, a successor would have been properly elected in October next preceding the expiration of such term; and if the successor would have been entitled to the office on the first Monday of March next succeeding his election, under the first section of the act of May 31st, 1852, the previous term would be thereby seriously decreased. Both acts, so far as they fix the commencement of the term, involve the same principle, and are alike subject to the same objections, as applied to particular cases, but may be constitutional as applied to others; and hence, the act of 1855, being in direct conflict with that particular provision of the first section of the act of 1852, repeals it by implication.

The act of 1855, as applied to the case under consideration, would not be obnoxious to the Constitution, but as we have seen, the case is, in fact, governed by a different statute.

Having thus determined that Wright was entitled to the office at the time of the demand, on the 11th of November, 1867, it follows that the demurrer to the information was properly overruled.

Wright, being the auditor de jure from and after the 11th of November, 1867, was entitled to exercise the franchises of the office, and to receive the fees and emoluments thereof. The right of Douglass to hold the office ceased at the same time, and he was thereafter a mere intruder, and his subsequent exercise of the office was a usurpation.

The remaining question is as to the measure of Wright's damages. Is he entitled, as was held by the circuit court, to recover the whole emoluments of the office received by Douglass for the time he unlawfully held possession, without any deduction for necessary clerk hire paid out by Douglass for discharging the duties of the office during the same time?

This question was virtually decided adversely to the claims of the appellant in *Glascock* v. *Lyons*, 20 Ind. 1. There the parties named were both candidates for the office

of sheriff of Fountain county, at the October election, 1856. Lyons was declared elected, was commissioned, and, having qualified, entered upon the duties of the office. Glascock contested the election, which was finally determined in his favor, and he recovered the office. He then sued Lyons for the whole amount of the fees of the office received by him during the time he kept Glascock out. The court below sustained a demurrer to the complaint, which, on appeal to this court, was held good. In the decision of the case it is said, in substance, that a person who is rightfully entitled to an office, although not in the actual possession of it, has a property in it, and may maintain an action for money had and received, against a mere intruder who may perform the duties of the office for a time and receive the fees arising therefrom, and such intruder cannot retain any part of the fees as a compensation for his labor. But it is argued by the appellant, that the decision was based on the allegation that Lyons had obtained the certificate of election and commission by deceit, falsehood, and fraud. We do not see how that allegation could effect the question of damages. If Glascock was entitled to the office, then Lyons was a usurper, and every one who usurps an office and thereby excludes the person rightfully entitled to it is guilty of a wrong which operates as a fraud, and the averments in that case amounted to no more.

It is said in 1 Selwyn N. P. 81, that "where a person has usurped an office belonging to another, and taken the known and accustomed fees of office, an action for money had and received will lie at the suit of the party really entitled to the office, against the intruder for the recovery of such fees." The same principle is clearly recognized in *Lightly* v. *Clouston*, 1 Taunt. 112, and in *Allen* v. *McKean*, 1 Sumner, 276.

And so, in *Boyter* v. *Dodsworth*, 6 Term R. 681, Lord KENYON said, "if there had been certain fees annexed to the discharge of certain duties belonging to this office, and the defendant had received them, an assize would have lain; and

the action for money had and received to recover fees has always been considered as being substituted in the place of an assize."

The principle involved in the case at bar was directly passed upon in *Dorsey* v. *Smyth, County Auditor, &c.,* 28 Cal. 21. In that case, one Brown was the incumbent of the office of district attorney of the county of Toulumne. Platt and Dorsey were opposing candidates for the same office. Platt was declared elected, but Dorsey contested his election on the ground of illegal votes, and the contest was determined in Dorsey's favor, in December, 1863. Platt, however, appealed to the Supreme Court, where the judgment below was affirmed, at the October term, 1864. The term of office commenced on the first Monday in March, 1864. Dorsey qualified and demanded the possession of the office of Brown at the commencement of the term, but he refused to surrender it until after the final determination of the contest in the Supreme Court. Brown received the salary for the time he held over, amounting to seven hundred dollars. When Dorsey came into office he claimed the salary for the same time, and demanded of Smith, the auditor of the county, a warrant on the treasurer for the amount, which the auditor refused to issue. Dorsey then applied for a mandate to compel the issue of the warrant. It was held that he was entitled to it; that Brown was presumed to know the law, that he was a mere intruder for the time he held the office against Dorsey, and was not entitled to any compensation for his services.

In the case of the *United States, for the use of Crawford* v. *Addison,* 6 Wal. 291, Crawford, being the Mayor of the city of Georgetown, was, in 1859, a candidate for re-election. Addison was the opposing candidate. Crawford was returned as elected. He presented himself to the city council and offered to take the usual oath. The council, on account of the votes made by themselves, declared that Addison was really elected, and he was accordingly sworn into office and entered upon its duties. On a *quo warranto*

against Addison there was a judgment of ouster. He took a writ of error, and executed a bond in the sum of three thousand dollars, to prosecute the writ and to answer all damages and costs, if he should fail to make his writ good. The writ of error was subsequently dismissed, and Crawford came into office, and then brought suit on the bond to recover $1,104, the amount of the salary received by Addison, from the date of the bond to the time that Crawford got possession of the office. It was held, that the amount of the salary received by Addison, during said period, constituted the measure of the damages which the plaintiff was entitled to recover on the bond. It is also said in the decision, that "the rule which measures the damages upon a breach of contract for wages or for freight, or for the lease of buildings, has no application. In these cases the party aggrieved must seek other employment, or other articles for carriage, or other tenants, and the damages recovered will be the difference between the amount stipulated and the amount actually received or paid. But no such rule can be applied to public offices of personal trust and confidence, the duties of which are not purely ministerial or clerical."

We are not aware of any principle of the law that would entitle the appellant to claim a deduction from the amount of the fees received by him during the time he unlawfully held the office against Wright. The official acts of the appellant during that time are held to be valid as to the public and third parties, simply because the public good requires that it should be so, to prevent still greater mischiefs. But as to the appellant himself, they were illegal. Being a mere intruder, the appellant can claim no benefit from his acts; he was not entitled to receive any compensation for the services rendered, either by himself or by those acting under him, and could not maintain an action for the recovery of the fees appertaining to the office. *Bentley* v. *Phelps*, 27 Barb. 524; *Riddle* v. *The County of Bedford*, 7. Serg. & R. 386; *People* v. *Tieman*, 30 Barb. 193.

Wright was entitled to the office and to receive the fees and emoluments of it, but by usurpation the appellant unlawfully held the office and received the emoluments without the assent of Wright, either express or implied. The money so received was due to Wright, and the appellant must therefore be held as having received it to his use.

And, as the appellant was an intruder, and held the office and performed the labor against the protest and express will of Wright, the law cannot imply a promise to pay any compensation for such services; and hence he is not entitled to any deduction from the amount of fees received by him, on account of such services or clerk hire.

The judgment is affirmed, with costs.

GREGORY, J.—I disagree with my brother judges on the question of damages involved in this case. This is not an action "for money had and received," but an information under the statute, against the appellant for usurping an office to which, it was claimed, the relator was commissioned, qualified, entitled, and of which he had demanded possession. The statute provides, that "whenever an information shall be filed against a person for usurping an office, by the prosecuting attorney, he shall also set forth therein the name of the person rightfully entitled to the office, with an averment of his right thereto; and when filed by any other person, he shall show his interest in the matter, and he may claim the damages he has sustained." 2 G. & H. 323–4, sec. 752. How much damages has the relator sustained by the wrongful act of the defendant? is the question to be solved.

The damages, by the very words of the statute, are compensatory, and not punative; "the damages he has sustained" is the criterion, and not, as in the statutory action of seduction, by the injured party, "such damages as may be assessed in her favor." 2 G. & H. 55 sec. 24. If this is the correct view of the statute, it seems to me plain, that whatever sum of money would compensate the relator for

his actual loss, is the measure of damages. There was no attempt in this case to reduce the damages by showing that the relator might have procured other like employment for the time he was kept out of office, or some portion thereof, and therefore that question does not arise.

Had the relator succeeded in getting the possession of the office, he would have been compelled to avail himself of the assistance of a clerk, for otherwise it could not be said that the sum named in the agreed statement of facts, was paid out for necessary clerk hire. The office of county auditor is mainly, if not wholly, ministerial, and if the entire duties cannot be performed by the incumbent, then he must provide the necessary aids to accomplish that end.

*United States* v. *Addison*, 6 Wal. 291, cited by the court, is decided on correct legal principles, and, when properly understood, does not conflict with my views in the case at bar. It is correctly said, in that case, that "the rule which measures the damages upon a breach of contract for wages or for freight, or for the lease of buildings, has no application. In these cases the party aggrieved must seek other employment, or other articles for carriage, or other tenants, and the damages recovered will be the difference between the amount stipulated and the amount actually received or paid. But no such rule can be applied to public offices of personal trust and confidence, the duties of which are not purely ministerial or clerical." The legal reason why no such rule can be applied in such cases is to be found in the principles settled in *Costigan* v. *The Mohawk & Hudson R. R. Co.*, 2 Denio, 609, cited by the court. It is, that in actions on contracts of hire for services to be performed in a particular kind of employment or business, for a specified time and compensation, where the plaintiff has been unlawfully dismissed by the defendant, the latter may show in reduction of damages, that employment of the same general nature as that from which he has been dismissed, and to be carried on in the same locality, has been offered to the former and refused by him; but not a different kind of employment, or

business to be conducted at another place. In the *United States* v. *Addison, supra*, the relator, Crawford, had been elected to the office of Mayor of Georgetown for the term of two years and until a successor should be duly elected. Of course this office involved a trust and confidence, the duties of which were not purely ministerial or clerical, and, in the very nature of things, there was no other employment of the same kind, to be carried on in the same locality, to be found.

*Glascock* v. *Lyons*, 20 Ind. 1, cited in the. opinion, does not hold, as I understand it, as stated by the judge who speaks for a majority of the court, that the "intruder cannot retain any part of the fees as a compensation for his labor." No such question was involved in the case. The simple question involved in that case was, whether the action "for money had and received" would lie by Glascock against Lyons, the latter having been commissioned and qualified, the former not having been commissioned. It had been urged that Glascock could not maintain the action "for money had and received" for the fees of the office, because he had never been in a situation to be entitled thereto, he never having been commissioned and qualified. This court attempt to answer that objection, and then say, "if the proposition is correct that he who is rightfully entitled to an office has a property in it, though not, perhaps, strictly in the commercial sense of that term, then we are not able to perceive how a mere intruder, who may perform the duties for a time, can, in good conscience, retain the fees, &c., for such service. If he could, under such circumstances, be permitted to retain such fees, it would be on the ground that they were a remuneration for his labor, &c.; but that would not justify the retention of any sum over such mere remuneration; if justified to that amount, how could the case be distinguished from one where A. B. may, without a contract or request, express or implied, perform ordinary labor for C. D.? In the latter, it is well settled there is no right of action accrues to the laborer. How

could there in the former? If not, upon what principle can the labor be set up as a defense to an action for money received to which the plaintiff was entitled. We are now treating this case as resting upon the facts averred and by the demurrer admitted to be true, namely, that the plaintiff was duly elected and justly entitled to the office, but that the defendant had obtained the evidences of title thereto through deceit, falsehood and fraud—had intruded into the same and was usurping the duties thereof. Under these admitted facts, we are not able to perceive any good conscience there would be in permitting the defendant to retain anything over a bare compensation, nor, in view of the well established class of decisions in similar cases already adverted to, how he can retain any portion of said fees. If the facts are not as stated, issue should have been taken thereon."

I have made this long extract for two purposes; first, to show that the assumption of the majority is without foundation; and secondly, to answer the *dictum* of the judge as to that class of cases where labor is performed without contract or request. For it seems to me that the whole argument in the case at bar, drawn from the fact that the action for money had and received will lie in this class of cases, is founded on a false assumption. In the class of cases like the one at bar, the form of the action, if in assumpsit "for money had and received," confirms the authority of the wrong doer in the act of collecting the fees, and converts him into an authorized agent for this purpose. Douglass was a mere intruder; Wright was commissioned and qualified and demanded the office; in such a case, the latter could collect the fees of the office as they accrued; and, according to some of the cases, even a payment to the intruder would not protect the payer from paying them to the rightful officer. *The People* v. *Tieman*, 30 Barb. 193; *The People* v. *Smyth* 28 Cal. 21. Now, if Wright, instead of bringing this action, had brought an action for "money had and received" against Douglass, for the fees collected by the latter,

it would have been a confirmation of his acts in the collection thereof.

In *Hunter* v. *Prinsep*, 10 East, 378, Lord ELLENBOROUGH, C. J., says, "the plaintiff, having sued for the proceeds in this form of action 'for money had and received,' has, in virtue of his so suing, adopted and confirmed the act of the master, by which the goods were converted into money." Paley recognizes the same principle. See Dunlap's Paley's Agency, 173, and note (*w*) and the authorities there cited. The confirmation of an authorized act relates back and covers the entire act from the beginning. So, in the case put, Douglass would have been the authorized agent from the beginning in the collection of the fees due Wright. Now, in such a case, the rule is, "whatever an agent is entitled to deduct from the demand of his principal for advances or disbursements of any kind, may be given in evidence in an action brought against him, without pleading it, or giving notice of set-off. For the balance only is the debt." Dunlap's Paley's Agency, 124.

But I cannot see what the fact that an action for "money had and received" will lie, can have to do with the measure of damages in this case. Nor does Douglass claim to retain one cent for his labor; he only claims to deduct the necessary expense in making and collecting the fees in question; and I know of no rule of law or of morals that would prevent him from having what he is so justly and equitably entitled to. The fact that he was a wrong doer does not deprive him of this right. All the relator can claim is to be placed in as good a condition as he would have been had he got possesion of the office.

To my mind it is rather singular legal logic to say, that *The People* v. *Smyth*, *supra*, is in point in the case in judgment, when, according to that case, Wright could now sue and recover the entire fees of the office from the parties against whom they were taxed, and the fact that they had paid them to Douglass would be no defense; and yet, the fact that Douglass had collected them without au-

thority would entitle Wright to damages against him for the full amount thereof. A. collects from B. one hundred dollars due C., without authority; C. could insist on payment from B., notwithstanding the unauthorized payment to A.; and yet an action for the wrongful act of A., in favor of C., according to this reasoning, must result in a judgment of one hundred dollars, although the act did not damage C. one cent. In such a case, it is true that C. could waive the wrong and sue A. for the money in an action for "money had and received," but in such a case A. would then become the authorized agent of C.

·*S. K. Wolfe, J. E. McDonald, A. L. Roache,* and *E. M. McDonald,* for appellant.

*W. Q. Gresham* and *T. C. Slaughter,* for appellee.