THE PEOPLE *ex rel.* MORTON *vs.* TIEMAN.

Where an individual claims, by action, a public office, or the incidents to the office, he can only recover upon proof of title.  The salary and fees of an office are incident to the title, and not to the usurpation and colorable possession of the office.

Possession under color of right, though it may serve as a shield for defense, cannot, as against the public, be converted into a weapon of attack, to secure the fruits of the usurpation and the incidents of the office.

At common law, a public officer, appointed or chosen for a specified term, cannot hold over, beyond that term, upon the failure of the proper body to appoint or elect a successor.

Provision is made by the laws of this state for all the cases in which persons in office can hold over, beyond the times for which they were appointed or chosen.  But there is no provision of law authorizing the incumbent of the office of city inspector of New York, to hold over, after the expiration of his term, and until his successor is appointed.

Accordingly, where the relator, prior to the passage of the act of 1857 amending the city charter, was elected to the office of city inspector, for the term of three years, which term was to expire on the 31st of December, 1858; it was *held* that by virtue of the act of 1857, which expressly limited his term of office to the time for which he was elected, and repealed the act under which he took office, the relator's authority as city inspector ceased on the 31st of December, 1858; and that consequently he could not, by mandamus, compel the mayor to countersign the warrant of the comptroller, for his salary, during the months of January and February, 1859.

MOTION for a peremptory mandamus to the defendant, as mayor of the city of New York, directing him to countersign a warrant of the comptroller, for the payment of the salary of the relator as city inspector, for the months of January and February, 1859.

*J. W. Edmonds,* for the relator.

*R. Busteed,* for the defendant.

W. F. ALLEN, J.  This proceeding is instituted to compel the defendant to countersign the warrant of the comptroller, for the payment of the salary claimed by the relator as "city inspector," for the months of January and February, 1859. Upon the return of the alternative writ of mandamus, the relator, not controverting the facts stated in such return, moves that a peremptory writ issue. There are no disputed facts in the case. Aside from some clerical mistakes as to dates, which do not mislead, and are therefore immaterial, the alternative writ presents every fact necessary to the determination of the controversy, and the return neither traverses nor avoids any facts alleged in the writ.

The parties differ only as to the legal results deducible from those facts. The relator, prior to the passage of the act amending the charter of the city, in 1857, was elected to the office of city inspector for the term of three years, and his term of office would have expired on the 31st day of December, 1858. By the act of 1857, the government of the city was remodeled, and among other alterations the mode of appointment and the tenure of office of the city inspector was changed. No appointment to the office has been made under the provisions of the new charter, and the relator claims that he is still in office by virtue of his election under the former acts. He bases his claim to the remedy by mandamus upon his title to the office. This prerogative writ can only issue to enforce a clear legal right. The relator necessarily tendered an issue upon the legal title—his mere right to the office—not upon the possession and the exercise of its functions under color of right. After alleging the facts, he says: "That he therefore continues to be, and still is, and during the months of January and February, 1859, was, the city inspector of the

city of New York, and entitled to all the salary, fees, perquisites and emoluments thereof."

The salary and fees are incident to the title and not to the usurpation and colorable possession of an office. An officer *de facto* may be protected in the performance of acts done in good faith in the discharge of the duties of an office under color of right, and third persons will not be permitted to question the validity of his acts by impeaching his title to the office. Public interests require that the acts of public officers, who are such *de facto*, should be respected and held valid as to third persons who have an interest in them, and as concerns the public, in order to prevent a failure of justice. (2 *Kent's Com.* 295.)

It does not follow that a right can be asserted and enforced on behalf of one who acts merely under color of office without legal authority, as if he were an officer *de jure*. When an individual claims by action the office, or the incidents to the office, he can only recover upon proof of title. Possession under color of right may well serve as a shield for defense, but cannot, as against the public, be converted into a weapon of attack, to secure the fruits of the usurpation and the incidents of the office.

It may well be that every act of the relator as city inspector hitherto done by him may be valid, and the city bound by all his contracts and engagements properly entered into, and yet he may not be entitled to claim any thing more than mere protection and immunity from action as an officer *de facto* since the 1st of January, 1859. Evidence establishing the fact that an officer issuing process is an officer *de facto*, is not merely *prima facie* evidence that he is an officer. It is conclusive for the protection of a ministerial officer required to execute such process; but to constitute a person an officer *de facto*, a mere claim to be a public officer, and executing the duties of the office, is not sufficient. There must be some colorable right of office, or an acquiescence on the part of the public for such length of time, as will authorize the presump-

tion of at least a colorable election or appointment. (*Wilcox* v. *Smith*, 5 *Wend.* 231.)

Whether the relator was, during the period for which he claims his salary, city inspector *de facto*, or what rights or liabilities result from his acts, either to third persons, the public, or the city government, cannot be determined here. It is claimed by the relator that the title to an office cannot be tried in this proceeding. If so, then the defendant is entitled to a judgment dismissing the writ; for whether the right claimed is established by evidence which would make the relator an officer *de facto*, or by that which would make him such *de jure*, is immaterial. In either case it is proof that he is an officer, in both proving, by evidence differing in degree, that he is an officer *de jure*.

An officer *de facto* is presumed to be an officer *de jure*, and in some cases, as in *Wilcox* v. *Smith*, the presumption is conclusive; but it is only conclusive when the officer is to be protected in the discharge of his duties, or the rights of third persons, or the public interests are concerned. So that it does not lie with the relator who bases his right of action upon his title, to say that such title cannot be tried in the proceeding instituted by himself; in other words, he cannot preclude his adversary from denying any allegation of fact material to his case. It is true that, ordinarily, a right to office cannot be tried collaterally, as in an action to compel a ministerial officer to perform acts founded upon the proceedings of an officer who is such *de facto*. He has no right to decide on the acts of an officer, or adjudge them to be null. (*People* v. *Collins*, 7 *John.* 549.)

Assuming all that is claimed by the relator, and that the mayor acts ministerially in countersigning the comptroller's warrant, the right of the relator to call upon him to act depends solely upon his title to the office. The title is not, therefore, collaterally questioned, but is directly in issue, and is the only material fact in the case. It is insisted, on behalf of the relator, that by the omission or failure of the mayor to

appoint an officer in his place at the expiration of his term of office, he held over and of right exercises the duties of the office, and is entitled to its emoluments. This, I think, depends upon the true construction of the amended charter of 1857. I know of no common law rule by which a public officer appointed or chosen for a specific term, can hold office beyond that term, upon the failure of the proper body to appoint or elect a successor. Officers and agents of private corporations, whose appointment is annual, have, I think, as against the corporations, been held to continue in office after the ex-expiration of the year, when no successor has been appointed, and they have continued to act by the sufference or permission of the corporation. So, too, in a municipal corporation, the subordinate agents and officers receiving their appointments from the local government, and acting as the servants and agents of the appointing body, may perhaps hold office beyond the term for which they were originally appointed; or at least, so long as they are permitted to act they may bind the corporation in whose behalf they act.

The question has, I think, generally arisen where the rights of a third party have been concerned, and there is a very obvious distinction between such a case and that of a claim by the officer to continue to act as a matter of right and as against the corporation. The case of *McCall* v. *Byram Manuf. Co.* (6 *Conn. Rep.* 428) illustrates the point. The service of a summons upon the secretary of the company more than a year from the time of his election had elapsed was attempted to be invalidated, and the court, in a very cautious opinion, sustained the evidence; holding that the officer, although the office was intended to be and was annual, continued until superseded by the appointment of another in his place. The court is, however, very careful to say that neither the charter nor the by-laws limited the official existence of the secretary. The uniform course of legislation is very high evidence that there is no rule of common law by which an individual elected or appointed to office continues in office after the expiration

of the term limited by law, and until a successor is chosen and qualified. "It is a usual and wise provision in public charters, that the officers directed to be annually appointed shall continue in office until other fit persons shall be appointed and sworn to their places. This was the case in the charter granted to the city of New York in 1686 and 1730." (2 *Kent's Com.* 295, *note a.*) It is "usual" because it is deemed necessary, and "wise" because it is necessary to enable the officer to perform the duties of his office after the expiration of the term prescribed by law.

Very careful provision is made by the laws of this state for all the cases in which it has been deemed wise to authorize persons in office to hold over beyond the times for which they were appointed or chosen. The act of 1824 (*Laws of* 1824, *p.* 380) was very general, and applied to all officers who were duly commissioned and had entered upon the duties of their respective offices; and enacted that they should continue in office until their successors were commissioned and sworn. The revised statutes restrict the power to officers duly appointed, (other than justices of the supreme court,) and to sheriffs and clerks of counties, including the register of the city and county of New York. (1 *R. S.* 117, §§ 9, 10.)

The revisers reported a section to the effect that the powers of every other officer who should be elected by the people and not re-elected, should cease with the term for which he had been chosen. This was not enacted, for the reason, doubtless, that it was not deemed necessary. It cannot be urged as evidence that the legislature intended that the converse of the proposed enactment should be the law; else why did the legislature provide in terms for the continuance in office of sheriffs and clerks who were elected by the people, and would have continued in office without the provision?

That provision is evidence, first, that they deemed it necessary, and second, that officers not named were intended to be excluded; *expressio unius,* &c. It has never been supposed that members of assembly or senators would hold over, upon

The People v. Tieman.

the failure of the people to elect a successor. So, too, town officers, with specified exceptions, hold their offices for one year and until others, chosen or appointed in their places, have qualified. (1 *R. S. p.* 347, § 30.)

This careful legislation discloses the mind of the legislature, and is a legislative exposition of the common law rule upon this subject. The colonial charters of the city made provision for the performance of the duties of certain officers, by those duly commissioned, until successors should be duly qualified. But a city inspector was not then known, and of course is not named. (*Davies' Laws*, 153, 171, &c.) By the act of 1857, the "Dongan and Montgomerie charter" is preserved; but all acts amending the charter, and all laws inconsistent with that act, were repealed by the act of 1857, (§ 54.)

The relator was elected to the office under one of the acts thus in terms repealed. When the repealing act took effect the former acts ceased to exist, except so far as they were expressly retained. All power granted by the repealed acts was revoked, and all commissions under those acts terminated with the acts themselves. A law repealed is as no law, and as if it had never existed, except as to the rights accrued and vested under it; and the right to hold office for a given term is not a vested right, within the exception. In the act of 1849, amending the charter, it was enacted that all officers who should be in office when that act should take effect, should hold their offices until their successors should be duly qualified, (*Davies' C. L.* 209, § 526,) which is but another legislative expression of opinion as to the necessity of such a provision. A like provision is embodied in the act of 1857, and made applicable to all persons in office under the city government, excepting certain officers, (one of whom is the "city inspector,") who should "continue in office until the expiration of their several terms." (*Act of* 1857, § 351.) This clause modified the repealing clause of the act, and made it take effect, so far as it affected the office of the relator, at the

expiration of his term of office. The legislature did not shorten his term of office, but upon the expiration of the term for which he was elected, the repealing clause took full effect, and of course the official existence of the relator, derived under and dependant upon the repealed act, ceased.

It is very likely that could the legislature have forseen, or had they thought it possible, that the mayor would be so unmindful of his duty as to fail to nominate his successor, or so unfortunate as to be unable to nominate one who should prove acceptable to the board of aldermen, they might have provided for the continuance in office of the relator until his successor should be qualified. But by compelling the mayor, upon the rejection by the aldermen of one nominee, to nominate another immediately, they have not left it optional with the mayor to suffer a vacancy to exist, and the contingency which has occurred was not foreseen. But it is sufficient for this case that the legislature have not continued the relator in office after the 31st of December, 1858.

The heads of the executive departments, as organized and appointed under the act of 1857, held office for two years, and until the appointment of their successors. (*Act of 1857*, § 21.) It is very evident that this section has no reference to those in office at the time the act should become a law. Aside from its terms, which indicate its application to those to be appointed under the act, provision is made in subsequent sections in respect to those then in office. *Tully* v. *The State* (1 *Carter's R.* 500) is, I think, in principle, decisive of this case. The syllabus of that case, so far as pertinent, is to the effect, that when there is an express or implied restriction, in a charter of incorporation, upon the time of holding office under such charter, as that the officers shall be annually elected on a particular day, and that they shall hold from a charter election day until the next, or that they shall be elected for the year ensuing, only, in such cases the officers cannot hold over beyond the next election day, or the end of the year. When, by the constitution of the corporation, the

officers are elected for a term, and until their successors are elected and qualified, or when they are elected, for "the year ensuing," and the charter contains no restrictive clause, the officers may continue to hold their offices after the expiration of the year, and until they are superseded by the election of other officers to fill their places. The action was against the sureties of school commissioners who had been elected and had qualified under an act which, as in this case, had been repealed, 'for a default happening after their term of office had expired. The court, in the opinion, quote the language of the last act, and say that it is as if it had read, "Be it enacted, that in each county of this state in which there is no school commissioner, one shall be elected at the next annual August election. That in each county where there is a school commissioner now in office, such commissioner shall continue to hold for the term for which he was elected."

This is substantially the provision of the act of 1857 under consideration, and the courts in Indiana say of the act of that state, "These provisions in effect repeal the clause in the law of 1831, authorizing Tully to hold over till the qualification of a successor, and, as we think, place his case among those of the first class recounted in this opinion, in which there is an implied restriction upon the right of holding over." The head note of the reporter upon this branch of the case is: "Under the act of 1831, a school commissioner could have indefinitely held his office until the election of a successor, and in such case his sureties would have been liable for his acts during his continuance in office. The act of February 2d, 1838, repealed the act of 1831, and limited the terms of school commissioners to the precise times for which they were elected, and the sureties are not liable under the law for the acts of the commissioner after the expiration of his term."

Now, it is not necessary to say, with the court in the case cited, that if there is no restriction, express or implied, in the law, an officer, elected for a given time, may hold over

until superseded by his successor, for the reason that in this case, within the rule laid down, there is a restriction imposed by the act limiting the term of office of the relator to the precise term for which he was elected.

I am of the opinion, that upon his own showing, and upon the just construction of the act of 1857, he did not continue in office after the 31st of December, 1858. 1st. By the repeal of the act under which he took office—which repeal took full effect upon his office on the day named—his authority as city inspector wholly ceased. 2d. There is no provision of law in force authorizing him expressly, or by implication, to continue to perform the duties of the office after that day. 3d. His term of office is expressly limited by the act of 1857 to the time for which he was elected, which expired on that day.

It follows that he has not established a right to the writ for which he asks, and the motion must be denied with costs.

[NEW YORK SPECIAL TERM, May 2, 1859.  *W. F. Allen*, Justice.]