State *ex. rel.* of C. C. KING v. JOSEPH A. McLURE.

*Office and Officer—Constable, term of office of.*

1. The provision in article four, section twenty-five, of the constitution that " all incumbents of said offices shall hold until their successors are qualified," does not embrace the office of constable.
2. Where a constable was elected in 1875 for two years and no election was had in 1877; *Held* that a vacancy occurred which the county commissioners had the power to fill. Const. Art. IV., § 24.

(*People* v. *McIver*, 68 N. C., 467, cited, distinguished and approved.)

CIVIL ACTION in the nature of *quo warranto* tried at Fall Term, 1880, of MECKLENBURG Superior Court, before *Seymour, J.*

This action was instituted in the name of the people of the state on the relation of the plaintiff, King, to try the title to the office of constable. The facts are stated by Mr. Justice RUFFIN in the opinion of this court. His Honor held that the defendant was entitled to hold the office, and the plaintiff appealed.

*Messrs. Shipp & Bailey*, for plaintiff.
*Messrs. Dowd & Walker* and *A. Burwell*, for defendant.

RUFFIN, J. In this action the relator seeks to recover of the defendant the office of constable for the Charlotte township in Mecklenburg county.

At the regular election, held to fill that office in August, 1875, the relator was elected and soon thereafter was inducted into office. There was no election in 1877 for constable in that township, the county commissioners having failed to provide for one. On the 6th of August, 1877, the said commissioners notified the relator to file a bond, which he did on the 8th, and the same was accepted. On the first Monday of September, 1877, the county commissioners declared the office of constable of the township to be vacant and appointed the defendant thereto, who gave the bond and was inducted into office. The relator at the same time tendered a bond which the commissioners declined to receive.

Under these facts the relator claims that he had the right to hold over in his office until an election, and that there was no vacancy which the commissioners could fill by the appointment of the defendant; and that is the point presented for our determination.

It is stated as an admitted fact in the case, that the action of the commissioners in giving notice to the relator to file a bond and their acceptance of it on the 8th of August, 1877, was the result of a misapprehension, and that he bases no part of his claim to the office thereon; so that those circumstances will not enter at all into our consideration of the rights of the parties.

These rights depend upon the construction to be given to the 24th and 25th sections of article four of the amended constitution of 1875. This article after providing for the election of judges of the supreme court, and judges of the superior courts for the state, and sheriffs and coroners for the several counties, provides, in the 24th section, for the election of a constable for each township, who shall hold

his office for two years, and in case of " vacancy existing for any cause in the office, the commissioners of the county may appoint to the same for the unexpired term ;" and in the 25th section it provides that "all vacancies in the offices provided for in this article of the constitution shall be filled by the appointments of the governor unless otherwise provided for, and the appointees shall hold their places until the next regular election for members of the general assembly, when elections shall be held to fill such offices. If any person elected or appointed to any of said offices shall neglect and fail to qualify, such office shall be appointed to, held and filled as provided in case of vacancies occurring therein. *All incumbents of said offices shall hold until their successors are qualified."*

The relator insists that the words which we have italicized apply not only to those offices provided for in the previous part of the section, the appointment to which in case of vacancies is conferred upon the governor, but to all offices provided for in any part of the fourth article, including that of constable, and that therefore he has a right to hold over in his office until a successor is qualified.

Keeping in view the rule, which is a cardinal one, that in giving a construction to the constitution the spirit and intent of its framers is the safest guide, and that in order to ascertain this intent, especially in the case of an amended constitution which is supposed to be changed because of newly discovered or newly arisen exigencies, the mischief intended to be remedied is the surest test, we have felt constrained to give to the clauses under consideration an interpretation differing from that insisted on by the relator.

It will be observed in the first place, that section 24 of article four of the amended constitution, in which the election for the office of constable is provided for, is in *ipsissimis verbis* with the 30th section of the same article in the constitution of 1868 : and that the 25th section of the former

contains the whole. of section 31, as it stood in the latter, with a modification and two additions.

This leads us to the conclusion that the provisions of the new constitution were merely substituted for those of the old, and that the modification and additions were intended to affect the subject matters embraced in the original section, but in nowise to multiply them; and since the section, before amendment, extended only to those offices which could be filled in case of vacancies by appointments made by the governor, so we hold it to be now after the adoption of the amendments.

As to the mischief intended to be remedied, we are forced to take notice of the fact, that the construction of that provision of the constitution of 1868, which gave the appointees of the governor in certain instances the right to hold their places until the next regular election, was at one time a vexed question, and that when brought here for a judicial determination, this court was itself divided as to the construction proper to be given to it, Judge READE, in a very able dissenting opinion, giving to the clause a meaning essentially differing from that given to it by other members of the court.

Again, we know that a grave doubt as to the real effect and meaning of that other clause of the older constitution, which extended the term of certain officers until their successors were elected and qualified, existed in the minds of the people of the state, and that it was not put entirely to rest even after the question had been the subject of a decision by this court, though that decision seemed to be supported by very sound reasoning and very high authorities. When those who framed the amendments to the constitution in 1875, came to perform their work, their purpose and intent were to render it certain in those particulars which had been the subject of controversy, and this they sought to do by specifying what general election it was, until which

the appointees of the governor should hold their places, and by declaring it to be the election to be held for members of the general assembly next after the time of their appointments, and hence the necessity for adding that last clause which the relator makes the foundation of his claim; for inasmuch as the election for the members of the general assembly might be held at a time when it was impossible for the person declared elected to qualify by taking the oaths of office, it was essential, in order to avoid the inconvenience of being without any officers, to provide that the incumbents, that is, those in under the appointment of the governor, should continue to hold until such qualification of their successors.

This being our interpretation of the constitution, it is not necessary for us to determine what would have been the the rights of the relator in the premises, in case the office of constable had been included in that class, the incumbents of which were allowed to hold over until their successors were qualified. But inasmuch as the right would have extended, not as in *McIver's* case, 68 N. C., 467, to the *election and qualification* of his successor, but to his *qualification merely*, we incline to think that the two cases might be distinguished. But in August, 1875, the relator was elected constable for the term of two years, which term expired in August, 1877; and in the absence of any law giving him a right to hold over, the office became vacant, so far at least as to devolve the duty of filling it upon the commissioners for the county.

As to the unseemliness so earnestly urged upon us by counsel, of permitting them, after creating the vacancy, to fill it with their appointee, we can only say that if guilty of any dereliction of duty they are amenable to the law, though this court can but be aware that about that time, owing to the shifting of the times for holding elections, some irregularity occurred in many parts of the state in regard to the

elections for offices of minor importance, and we presume the failure in this instance proceeded from some such cause. Be that however as it may, it can in no wise add to or detract from the rights of the relator under the law.

No error.                                          Affirmed.