UNITED STATES v. GREEN et al.

(Circuit Court, W. D. Missouri, W. D. December 10, 1892.)

1. OFFICE AND OFFICERS—RESIGNATION—APPOINTMENT OF SUCCESSOR.
   The constitution of Missouri (article 14, § 5) provides that, "in the absence of any contrary provision, all officers hereafter elected or appointed, subject to the right of resignation, shall hold office during their official terms, and until their successors shall be elected or appointed and qualified." Rev. St. Mo. 1889, § 1584, provides that the mayor, marshal, collector, and board of aldermen of any city shall hold their offices for two years, and until their successors are elected and qualified. *Held,* that the saving of right of resignation in the constitution does not enable an officer to resign so as to create a vacancy before the election of his successor, and, notwithstanding such resignation, he holds office until that time.

2. SAME—MANDAMUS—CONTEMPT.
   The mayor and aldermen of the city of Lathrop, Mo., having been served with a writ of mandamus to enforce the collection of a judgment against the city, made no response thereto, and the aldermen immediately offered their resignations, which were accepted by the mayor, and adjourned sine die, and no others were elected to take their places. *Held* that, as they are still the governing body of the city, they were guilty of contempt in refusing to comply with the writ of mandamus.

3. SAME.
   The mayor did not resign, but held office until his successor was elected and qualified, and thereafter removed from the city. *Held* that, as he alone was without power to comply with the mandamus, he was not guilty of contempt.

At Law. Proceeding by mandamus against J. R. Green, M. A. Goff, William McK. Lowe, H. M. Freeman, and J. C. Bohart, constituting the mayor and board of aldermen of the city of Lathrop, Mo.,

v.53F.no.8—49

to compel them to make a levy for the purpose of paying a judgment against the city. On motion to quash a writ of attachment for contempt. Granted as to respondent Green, and overruled as to the others.

Karnes, Holmes & Krauthoff, for plaintiff.

Sherry & Hughes, for defendants.

PHILIPS, Distr'ct Judge, (orally.) In the matter of the mandamus proceeding against the mayor and board of aldermen of the city of Lathrop the facts are briefly these: In 1889 the respondents, the mayor and board of aldermen of the city of Lathrop, (judgment having previously been rendered against the city in favor of certain holders of its bonds,) were served with an alternative writ of mandamus. To that alternative writ they made no response. On the 28th day of March, 1889, the alternative writ was made peremptory. On the same day of the order, and perhaps later in the afternoon or evening, they had a called meeting of the board. What they did at this called meeting is shown by the record made by the clerk of the board:

"Mayor's Office, Lathrop, Mo., Mch. 28, 1889. By call of the mayor, a special meeting of the city council was held this date. Mayor in the chair. Aldermen all present. The call for convening council was read and filed. M. A. Goff, Prest. of the board of aldermen, and alderman from the First ward, tendered his resignation, which, upon motion, was accepted, to take effect upon adjournment. Wm. McK. Lowe, alderman from the Second ward, tendered his resignation, and, upon motion, the same was accepted, to take effect upon adjournment. H. M. Freeman, alderman from the Second ward, tendered his resignation, and, upon motion, the same was accepted by the mayor, to take effect after adjournment. J. C. Bohart then tendered his resignation as alderman from the First ward, which, upon motion, was accepted by the mayor, to take effect after adjournment. Council then, upon motion, adjourned sine die."

And it has surely tried its best to die, and the question now is whether it is dead or not.

Some time after this, a city election was held, or the voters at least went through the form of an election. It seems, however, that the votes were never counted. They elected, at that time, another mayor, named Ellis, who staid around there for a while, and finally went to another district to live. From that time to the present they have had no other board of aldermen, or any one acting with authority, and the question now is, were these parties subject to contempt on this mandamus writ? Their contention is that they went out of office by resignation, and they claim the right therefor is predicated upon article 14, § 5, of the constitution of Missouri, which reads as follows:

"In the absence of any contrary provision, all officers hereafter elected or appointed, subject to the right of resignation, shall hold office during their official terms, and until their successors shall be duly elected or appointed and qualified."

The only provisions of the state statutes respecting such offices as these to which my attention has been called, and which I have been able to find, are the following:

"All officers elected or appointed by the authority of the laws of this state shall hold their offices until their successors are elected or appointed, commissioned, and qualified." Rev. St. Mo. 1889, § 7121.

"All vacancies in the board of aldermen shall be filled by election in such manner as may be provided by ordinance." Id. § 1587.

"The following officers shall be elected by the qualified voters of such city, and shall hold their offices for two years, and until their successors are elected and qualified, viz.: A mayor, marshal, collector, and board of aldermen." Id. § 1584.

The only pertinent provision that I am able to find in the statute is this section 1584, which provides that these officers shall hold their offices for two years, and until their successors are qualified. There does not appear to have been any ordinance under section 1587.

The contention of respondents is that the ruling in the Badger Case, 93 U. S. 599, (where it is held that municipal officers resigning under circumstances like these continue to hold office until their successors are elected and qualified,) was predicated of the common law. This is a glaring error. The court in the Badger Case say:

"By the common law, as well as by the statutes of the United States and the laws of most of the states, when the term of office to which one is elected or appointed expires, his power to perform its duties ceases. People v. Tieman, 8 Abb. Pr. 359, 30 Barb. 193. This is the general rule."

The statute of Illinois on which that decision was based provided, just as the Missouri statute, that such officers, notwithstanding their attempted resignation, continue in office until their successors are duly elected and qualified.

The next contention for the respondents is that the right of resignation is secured by the Missouri constitution, just cited, and that the resignation operates from the instant it is tendered. I do not think this a proper construction of the constitution. The other language of the provision was so broad and sweeping in terms that, lest it might be understood to preclude the possibility of resignation, the framer of the section thought it prudent to interpolate the words "subject to the right of resignation;" so that, while this right of resignation is secured, it only puts an end to the term just as by expiration of two years, or whatever the term of office be. As said by the court in the Badger Case, 93 U. S. 603:

"The resignations may be made to and accepted by the officers named; but, to become perfect, they depend upon and must be followed by an additional fact, to wit, the appointment of a successor, and his qualification. When it is said in the statute that the resignation may be thus accepted, it is like to the expiration of the term of office. In form the office is thereby ended, but to make it effectual it must be followed by the qualification of a successor."

This, too, is the view of the only court of this state which has had occasion to construe this provision, so far as I am advised. In State v. Hermann, 11 Mo. App. 43–48, the court say:

"We understand the general purpose of this provision to be nothing more than the prevention of an interregnum between the expiration of any officer's term of office and the qualification of his successor to discharge the same official duties. * * * The official term, as here understood, may end by the resignation or death of the incumbent. * * * The constitution does not intend to interfere with any of the methods whereby an officer's incumbency

may be made to cease, according to law, but only to provide that whenever it does cease, by whatever means, he shall be empowered to act until the qualification of his successor."

It is also to be observed that the said provision of the constitution opens with the following words, "In the absence of any contrary provision," which qualify the entire section; and the enactments by the legislature have but effectuated the spirit of the constitution by guarding against the hurtful consequences of creating a vacancy in office, either by expiration of the term fixed by the statute or by resignation. When the alternative writ was served on the respondents, they were brought into this court, and became subject to its jurisdiction and orders. The mandamus was made final, in fact, before their act of resignation. Their attempt to thus escape the judgment of this court was as abortive as it was ill advised. They are yet the governing board of the defendant city,—de jure, if not de facto. As such, they are, to-day, clothed with authority to proceed and execute the mandate of this court.

As to the respondent Mr. Green (the mayor at the time of the service of the writ of mandamus) the rule of contempt does not apply, He did not attempt to resign. He seems to have held office for the next year, when his successor was duly elected and qualified. He has since removed from the defendant city, and, of course, as mere mayor for the year succeeding the judgment of this court making the writ peremptory, he was without the power to comply therewith. The case of the aldermen, the other respondents, is quite different. They are not only yet in office, but, under provision of the statute governing cities of the fourth class, (to which the defendant city belongs,) they are authorized to elect a provisional mayor, and proceed with the government of the corporation. Rev. St. Mo. 1889, §§ 1616, 1617.

The motion to quash the writ of attachment as to the respondent Green is sustained, and overruled as to the other respondents, and they will be committed until a levy for the satisfaction of the judgment is made.