STATE *ex rel.* LAVIN *et al.* v. BACON *et al.*

1.  Since Const. Art. 14, § 2, creating the board of charities and correc-
    tions, to be appointed by the governor, and Laws 1890, Chap. 5 §§ 1,
    3, prescribing the number and qualifications of the members of the
    board, and fixing their term of office, contain no authority for holding
    over, the office of each member becomes vacant at the expiration of his
    term unless his successor has been appointed.

2.  Since Const, Art. 14, § 2, creating the board of charities and correc-
    tions, to be appointed by the governor, and Laws 1890, Chap. 5, §§ 1,
    3, prescribing the number and qualifications of members of the board,
    and fixing their term of office, contain no provision for filling vacancies
    the governor has power to fill vacancies by appointment for the full
    unexpired term, under the authority conferred on him by Const, Art.
    4, § 8, which provides that when any office shall from any cause become
    vacant, and no mode is provided for filling such vacancy, the governor
    shall have the power to fill it by appointment.

(Opinion filed February 27, 1901.)

Original *quo warranto* procedings by the State of South Dakota,
bv John L. Pyle, attorney general, on the relation of J. D. Lavin and
another, against J. H. Bacon and another.    Dismissed.

The facts are stated in the opinion.

*John L. Pyle,* attorney  general and *Alva E. Taylor,* for plaintiff.

At the common law the attorney general had the right, *ex-officio,*
to sue out a writ of *quo waranto,* or to bring an, information in the
nature of a *quo waranto* on behalf of the sovereign without leave of
court, it being a writ of right for the sovereign.    17 Ency. Pl. and
Pr. 443, and cases cited.

Also P. 448 and cases cited under note 2;  State v. Archibald,.
5 N. D. 359, 66 N. W. 234;   State *ex rel.* Dollard v. Board, 1 S. D.
292.

Section 1, Article 14 of the Constitution is as follows:   "The

Charitable and Penal institutions of the State of South Dakota shall consist of a penitentiary, insane hospital, a school for the deaf and dumb, a school for the blind and a reform school.

Section 2 of the same Article is as follows:

"Section 2. The state institutions provided for in the preceding section shall be under the control of the state board of charities and corrections, under such rules and restrictions as the legislature shall provide; such board to consist of not to exceed five members, to be appointed by the governor and confirmed by the senate, and whose compensation shall be fixed by law."

For the purpose of carrying out this provision of the constitution the legislature at its first session in 1890 passed Chapter 5 of the Session Laws of 1890, which provides for the appointment of these officers "by and with the consent of the senate."

Section 3 of the same act prescribes their term of office, which after the first selection shall be for six years.

Section 8 of article IV of the constitution provides:

"When any office shall, from any cause, become vacant and no mode is provided by the constitution or law for filling such vacancy, the governor shall have the power to fill such vacancy by appointment."

The first question that arises is in what manner an appointment may be made by the governor for these offices for the regular terms, and at what time these appointments are completed. So far as we have been able to find it has been uniformly held that where the constitution or the statute, or both, provided that an appointment should be made by the governor *"with the consent of the senate,"* or by and *"with the advice of the senate,"* or with the approval of the senate, such appointment is not complete until the senate consents, advises or approves of the same. People v. Cazanau, 20

Cal. 508; Tappen v. Grey, 9 Paige Ch. 506; People v. LaComb, 34 Hun. 409; People v. Van Horn, 18 Wendall 518; People v. Woodruff, 32 N. Y. 362; Smoot v. Somerville, 59 Md. 88; People v. Molyneaux, 40 N. Y. 113.

There are two questions to be determined in this proceeding. First, was there a vacancy at the time the defendants and their immediate predecessors were appointed? Second, was there such a vacancy that there was no mode provided by the constitution or law for filling the same so as to bring it within the provision of Section 8 of Article 4, of the constitution?

There are two reasons why these officers hold over. The first is because in the absence of any statutory provision or restriction they would hold over at the common law until their successors were duly appointed and qualified, and the second is because by the express provisions of the statute they hold over until their successors are elected and qualified. Foote v. Prowse, Mayor of Truro, 1 Strange 625; Queen v. Corporation, 10 Mod. 146; 10 Mod. 256; McCall v. Byran Mfg. Co., 6 Conn. 482; People v. Oulton, 28 Cal. 44; People v. Stratton, 28 Cal. 387; People v. Tilton, 37 Cal. 387; State v. Wells, 8 Nev. 109; State v. Harrison, 113 Ind. 434, 16 N. E. 384; State v. Howe, 25 Ohio St. 588.

*N. J. Cramer, C. H. Winsor* and *Horner & Stewart* for defendants.

There is a plain distinction between the office and the officers to fill it; two separate and distinct things. The office may exist without any officer filling it, or performing or exercising the duties, or the trust or agency of it. Driscoll v. Jones, 1 S. D. 8, 44 N. W. 726; People v. Dubois, 23 Ill. 549; People v. Bollam, 54 N. E. 1032.

When the duration of an official term is limited by the constitution or its authority or delegated power, the office becomes vacant

and the officer ceases to have any right to hold over after the expiration of his term, unless express power is given by the constitution or statute. In re. Sup. Ct. vacancy, 4 S. D. 532, 57 N. W. 495, and State v. Compson, 54 Pac. 349; State v. Thomas, 14 S. W. 108.

There being no provision for filling vacancies created by Art. 14 of the constitution, nor in the legislative act of 1890, enacted to carry into effect that article, a vacancy can only be filled by the governor pursuant to the provision of Section 8 of Article 4 of the constitution. State v. Finnerud, 7 S. D. 237, 64 N. W. 121; State v. Sheldon, 8 S. D. 525, 67 N. W. 613.

Chapter 101, Laws of 1889, has no application to this question, not only because the office was not created by the legislature, but because it has been practically repealed by the constitution and the legislative act (Chapter 5) of 1890. The first section is clearly repealed by that act by providing for tenure of the office. Section 2 is so connected with and related to Section 1 of the act of 1890, and to officers having the tenure provided thereby, and Section 1 having been repealed, and there being no law providing for holding over by officers of the kind and character specified in said section, it has no force or effect; and by the proviso in Section 3, the act does not apply to any state that may be created out of the Territory of Dakota.

HANEY, J. It is the object of this original proceeding by information in the nature of *quo waranto* to determine whether either of the defendants unlawfully holds and exercises the office of member of the board of charities and corrections. It appears from an agreed statement of facts that during the legislative session of 1893 the governor, by and with the consent of the senate, appointed William J. Sibbison and L. B. Laughlin as members of such board for the term of six years, commencing March 6, 1893, to succeed members whose terms expired March 5, 1893; that Sibbison and Laughlin

duly qualified on March 6, 1893, and entered upon the discharge and exercise of their duties as such members, and acted as such during their regular official terms, which expired on March 5, 1899; that during the legislative session of 1899 the governor appointed B. H. Lien and F. M. Brown to succeed Sibbison and Laughlin for the term of six years, commencing March 6, 1899, which appointments were not acted upon by the senate during that legislative session, which closed on March 3, 1899; that on March 4, 1899, the governor appointed Lien and Brown to succeed Sibbison and Laughlin without the consent or confirmation of the senate, and issued commissions to them wherein it is stated that they were appointed for the terms ending March 6, 1901; that on Maarch 17, 1899, Lien and Brown qualified and entered upon the discharge and exercise of the duties of such offices, and continued to hold, occupy, and possess such offices and act as such officers until December 15, 1900, when they resigned; that on December 27, 1900, the governor appointed the defendants for the unexpired terms commencing March 6, 1899, to fill the vacancies then claimed to be existing, without the consent or confirmation of the senate, and issued commissions to them wherein it is stated that defendant Bacon was appointed for the term ending March 6, 1905, to fill vacancy caused by the resignation of Brown, and that defendant Smith was appointed for the term ending March 6, 1905, to fill vacancy caused by the resignation of Lien; that on December 31, 1900, defendants qualified and entered upon the discharge and exercise of the duties of such offices, and have since acted as such officers, and are now so acting; that on January 15, 1901, the governor appointed relators, Lavin and Rice, in the places of Sibbison and Laughlin, whose terms expired in 1899, and submitted such appointments to the senate during the session of 1901, which appointments were duly confirmed; that thereafter and before the commencement

of this proceeding the relators duly qualified and demanded of defendants the possession of such offices, and the right to sit in their places upon the board of charities and corrections, and thereupon defendants refused to surrender possession, and refused to permit the relators to sit and act in their places.

From these facts arise the following important inquiries: Did vacancies exist when defendants were appointed which could be filled by the governor without the consent of the senate, and, if so, for what time could appointments be made? It is contended that no vacancies existed, for the reason that Sibbison and Laughlin, whose terms expired March 6, 1899, continued, as a matter of law, to hold the offices until the relators appeared— the first successors of Sibbison and Laughlin, whose appointments were confirmed by the senate. Assuming that the official status of Sibbison and Laughlin was not affected by their voluntary surrender of the offices to Lien and Brown, we will consider whether the former continued, in law, to hold the offices until successors were qualified who had been appointed and confirmed. The question here presented has caused the courts no little difficulty, and has resulted in numerous apparently conflicting decisions. It is self-evident that no person can be a *de jure* officer for any moment of time without authority of law. Where the duration of the term is definite and certain, the rights of the incumbent must cease with the expiration of the term, unless the law itself authorizes a further exercise of such rights. Usually the constitution or statute which fixes the term also provides that the incumbent shall continue to hold the office until his successor is selected as was the incumbent, and qualified. Where, as in the case at bar, neither the constitution nor statute contains any such or similar provision, the courts have reached different conclusions regarding the right of the incumbent to hold over. The apparent confusion on this

subject has evidently resulted from the diversity of language employed to define and limit the duration of the incumbent's term. In all such cases the controlling consideration should be to ascertain the intent of the lawmaking power. When that is ascertained it must be given effect. In the case at bar the term is fixed by the legislature at six years. Is there any provision of the constitution, any statute or any rule of the common law from which it can be inferred that it was intended that the officers involved in this proceeding should continue to hold their offices until their successors are selected by the concurrent action of the executive and senate? The absence of any phase indicating such an intention is a significant circumstance, in view of its frequent use in our constitution and statutes with respect to other officers. Numerous decisions on this subject have been examined. An intelligent review of them would require a careful consideration of the constitutional and statutory provisions upon which they are predicated, and would, we think, lead to the conclusion that the better reason and greater weight of authority are in favor of the doctrine that where the term is definite and certain, and there is no express constitutional or statutory authority for holding over, the office becomes vacant upon the expiration of the fixed term. But this question is no longer debatable in this jurisdiction. As early as 1882 it was decided by the territorial supreme court, and its opinion is entitled to the same weight by this court as are its own former adjudications. The revised codes of 1877 provided that each organized county should have one register of deeds, to be chosen at the general election in the year 1878, and every two years thereafter. It was silent as to holding over, and the territorial supreme court concluded for that reason that a register of deeds who did so was in possession unlawfully, and that he was a usurper. Rev. Codes 1877, p. 42, § 15;

Territory v. Hauxhurst, 3 Dak. 205, 14 N. W. 432. In the case of State v. Sheldon, 8 S. D. 525, 67 N. W. 613, it appearing that the defendant was appointed to the office of regent of education by the governor on March 12, 1896, in place of F. G. Hale, whose term expired on March 1, 1896, this court decided that the governor was authorized to make such appointment. The court then said: "To determine the legality of the appointment of the defendant, two questions present themselves for our determination: First, The term of office of Hale having expired, and no person having been appointed and confirmed by the senate, prior to the expiration of his term, to fill said office, can said Hale, under the constitution and laws of this state, hold over until a successor is appointed and confirmed by the senate? Second, If he cannot so hold over, and ceased to be a member of the board on March 1, 1896, was the governor authorized to appoint and commission the defendant, as regent, to fill the place made vacant by the expiration of the term of said Hale? The authorities seem to be quite uniform in holding that upon the expiration of an officer's term, unless he is authorized by law to hold over, his rights, duties, and authority as a public officer must *ipso facto* cease. Territory v. Hauxhurst, 3 Dak. 205, 14 N. W. 432; King v. Mc-Lure, 84 N. C. 153; Badger v. U. S., 93 U.S. 599, 23 L. Ed. 599; People v. Tieman, 30 Barb. 193; People v. Blaine, 6 Cal. 510; 19 Am. & Eng. Enc. Law. p. 434; Mechem Pub. Off. § 396. The constitution of this state creates the office of regent of education, and fixes definitely their term of office. Section 3, Art. 14, provides that 'they [the regents] shall hold their office for six years, three retiring every second year.' It will be observed that by the constitution the full term is definitely fixed at six years. No provision of the constitution has been called to our attention indicating that the framers of that instrument intended the incumbent of the office of regent to

hold over until his successor should be appointed and qualified. But, on the contrary, the framers of the constitution have clearly indicated by the provisions fixing the terms in such manner that three shall retire every second year, that they did not intend to confer upon the incumbent the right to exercise the duties of the office after his term expired. Any other construction would lead to a subversion of the plan adopted in the constitution for the regular succession of regents on the board. Our opinion is, therefore, that when Mr. Hale's term expired, on March 1, 1896, he ceased to be a regent, and his power and authority to act as such then terminated, and thereafter the office was vacant until filled by the governor by the appointment of the defendant. There being no person after March 1 legally authorized to perform the duties of the office, and the office, therefore being vacant on March 12, it was the duty of the governor to fill the vacancy, under the provisions of Section 8, Article 4, of the constitution, which provides that 'when an office shall, from any cause, become vacant, and no mode is provided by the constitution or law for filling such vacancy, the governor shall have power to fill such vacancy by appointment,' unless some other mode has been provided by the constitution or laws for filling the vacancy. No provision has been called to our attention by counsel for the plaintiff, either in the constitution or law, other than the general provision relating to the subject of regents in Section 3, Article 14, of the constitution." State v. Sheldon, 8 S. D. 525, 67 N. W. 613.

The constitution created a board of charities and corrections, consisting of not to exceed five members, to be appointed by the governor and confirmed by the senate. Const. Art. 14, § 2. It is silent as to the term of each member. Hence the legislature has power to fix the number of members, within the constitutional limitation, and to fix the term of each. This was done in 1890 by the use of the following language:

"SECTION I.   As soon as practicable after the passage of this act, and before the sixth day of March, 1890, the governor, by and with the consent of the senate, shall appoint five persons, residents of the state, any three of which commissioners shall not reside in the counties in which any of the public institutions of the state are located, who shall constitute a state board of charities and corrections, and the members thereof shall be known as the commissioners of said board."

"SEC. 3.   One of the persons so appointed shall hold his office for one year, two for three [years], and two for five years as indicated by the governor in making the nominations, and all appointments thereafter, except to fill vacancies, shall be made for six years." Laws 1890 Chap. 5.

The constitution, as it was when State v. Sheldon, *supra,* was decided, declared that the regents of education should hold their offices for six years, three retiring every second year.   Const. Art. 14, § 3.   The legislature fixed the terms of members of the board of charities and corrections at six years.   Neither the constitution, in the one case, nor the statute in the other, contains the phrase so frequently found in constitutions and statutes—that the officers provided for therein shall hold their offices until their successors are elected and qualified.   In the absence of such or a similar phrase-in the constitution, this court held in State v. Sheldon, *supra,* that the officer did not hold over after the expiration of his term.   In construing the language of constitutions or statutes, the object to be attained is the same.   It is to ascertain, if possible, the intent of the lawmaking power .   The same construction should be given to the same language used in the same connection in reference to a similar subject-matter when used in a statute as when used in the constitution.   People v. Tilton, 37 Cal. 622.   If the framers of the constitution did not

intend that regents of education should hold office until their successors are elected and qualified, the legislature did not intend that members of the board of charities and corrections should do so. No distinction can be drawn between the rule established by the constitution and the rule established by the statute, because none exists. In view of the former adjudications on this subject in this jurisdiction, sustained, as we believe they are, by the better reason and greater weight of authority, no valid reason can be given for changing a rule of law thus long and firmly established. We therefore conclude that Sibbison and Laughlin ceased, as a matter of law, to be members of the board of charities and corrections on March 6, 1899; and no successors having been appointed and confirmed during the legislative session of that year, there were two vacancies to be filled, and it was the duty of the governor to fill such vacancies by appointment without the concurrent action of the senate.

The contention that the appointmeents of Lien and Brown on March 4, 1899, were void because made before the expiration of the terms of their predecessors, need not be discussed, for the reason that a determination of that question would not affect the validity of the defendants' appointments in December, 1900. If, for any reason, Lien and Brown were not legally appointed, the offices were vacant from March 6, 1899, until defendants were appointed. If the appointments of Lien and Brown were valid, vacancies were caused by their resignations; and in either view, the offices were vacant when defendants were appointd.

Having decided that vacancies existed when defendants were appointed, which could be filled by the appointments of the governor, it becomes necessary to consider for what time such appointments could be made. The authority to make them was derived from the following provision of the constitution: "When any office shall,

from any cause, become vacant and no mode is provided by the constitution or law for filling such vacancy, the governor shall have the power to fill such vacancy by appointment." Const. art. 4, § 8. The proper exercise of this power was considered by this court in State v. Finnerud, 7 S. D. 237, 64 N. W. 121. It appeared in that case that prior to march 31, 1894, Alexander McIntire was duly appointed and confirmed as a member of the board of regents of education for the term ending in March, 1898. On March 31, 1894, McIntire resigned, and thereupon the governor appointed Finnerud to fill the vacancy for McIntire's unexpired term. In February, 1895, while Finnerud was acting as a member of the board, the governor nominated, and the senate confirmed, G. J. Coller as a member of the board to fill out the remaining portion of McIntire's term, and the question arose whether Finnerud or Coller was entitled to the office. It was contended then, as now, that an appointment to fill a vacancy could not extend beyond the time when a qualified person should appear who had been appointed and confirmed. But this court held that, there being neither in the article of the constitution creating the board, nor in the law enacted to carry that article into effect, any provision for filling vacancies in the office of regent, section 8, article 4 of the constitution, heretofore quoted, applied to such vacancy, and that Finnerud was entitled to the office for the full unexpired term of McIntire, notwithstanding the appointment and confirmation of Coller. No distinction can be drawn between that case and the one at bar, so far as the present official status of the defendants is concerned. This distinction, however, does exist: The term of a regent is fixed by the constitution; that of a member of the board of charities and corrections is fixed by the legislature; and whether the term of the latter can be extended or diminished by the legislature during the term for

which he was appointed, we do not now determine.  A comparison of the statute in force when the Finnerud case was decided, with the statute now in force in regard to the filling of vacancies on the board of charities and corrections, will show that we cannot hold that the defendants have been superceded by the relators without reversing our former decision.  The statute relating to regents which was construed in State v. Finnerud, contains the following:

"Section 1.  As soon as practicable after the passage of this act and before the first day of March, 1890, the governor, by and with the consent of the senate, shall appoint nine persons, residents of different portions of the state, at least six of whom shall not reside in counties in which any of the state educational institutions are located, who shall constitute a board of regents to be designated as regents of education."

'Section 3.  Three of the persons so appointed shall hold their offices for two years, three for four years, and three for six years, as indicated by the governor on making the nominations; and all appointments thereafter, except to fill vacancies, shall be made for six years."  Laws 1890, chap. 6.

The statute relating to the members of the board of charities and corrections contains the following:

"Section 1.  As soon as practicable after the passage of this act, and before the 6th day of March, 1890, the governor, by and with the consent of the senate, shall appoint five persons, residents of the state, any three of which commissioners shall not reside in the counties in which any of the public institutions of the state are located, who shall constitute a state board of charities and corrections, and the members thereof shall be known as the commissioners of said board."

"Section 3.  One of the persons so appointed shall hold his

office for one year, two for three [years], and two for five years, as indicated by the governor in making the nominations, and all appointments thereafter, except to fill vacancies, shall be made for six years." Laws 1890, chap. 5.

So far as these two acts affect the mode of filling vacancies, they are identical; and, if the former did not preclude the governor from filling any vacancy on the board of regents for the full unexpired term, the latter act does not preclude him from filling any vacancy on the board of charities and corrections for the full unexpired term. Therefore the conclusion cannot be escaped that the defendants are lawfully holding and exercising the offices of members of the board of charities and corrections. Manifestly, this conclusion cannot be modified by the tenure of office act of 1889, because that act expressly provides that it shall not be construed as applying to the governor of any state created out of the then territory of Dakota. To give it any force whatever in this case would be to limit the appointing power of the governor of a state created out of the former territory, and any such application of its provisions is expressly prohibited by the language of the act itself. Laws 1889, chap. 101.

It may be argued that the membership of these boards should be, so far as possible, always composed of persons whose appointments have received the sanction of the senate; and, on the other hand, it may be contended that, whereas the governor is usually regarded as being responsible for the management of the state institutions during his term of office, he should have exclusive power to select and to remove at pleasure all officers connected with such management. But it belongs to the political, not the judicial, department of the government to determine these interesting and important questions of civic policy as its wisdom shall deem for the best in-

terests of the people.   If there is any serious objection to the practice of filling vacancies on these boards by appointments extending beyond the next ensuing legislative session, the legislature can at any time remedy the evil by providing a different mode, as was suggested by this court in its former decision, and as was done in relation to the board of regents in 1897.   State v. Sheldon, *supra;* Laws 1897, chap. 58.   Defendants are entitled to a judgment dismissing this proceeding upon its merits, and for their disbursements herein.

FULLER, P. J.   (Concurring.)   Being doubtful as to my ability to add anything particularly instructive to the foregoing opinion, sustained as it is by the former decisions of this court, I should concur without comment or further citation of authority, were it not for the fact that counsel for the relators most zealously maintains that . the statute places no restriction upon the right of a commissioner to hold the office after the expiration of his term.   A careful examination of all the law upon which the decisions rendered by the courts of this country are based, discloses, in almost every instance, either a constitutional or statutory provision expressly authorizing the officer to hold, not only for a fixed period, but until his successor is elected and qualified.   Although the authorities are practically unanimous upon the proposition that at the expiration of the officer's term his rights, duties and authority as a public officer cease instantly, unless he is authorized by law to hold over, let it be assumed, for the purpose of determining the legal effect of our statute fixing the full term at six years, that Sibbison and Laughlin might have held thereafter unless expressly or impliedly prohibited.   Judge Dillon states the prevailing law on the subject thus:   "Where, in the charter or organic law of a corporation, there is an express or implied restriction upon the time of holding office, as that the officers shall be annually elected

on a particular day, and that they shall hold from one election day till the next, or that they shall be elected 'for the year ensuing only,' in such case they cannot hold over beyond the next election day or the end of the year." 1 Dill. Mun. Corp. 303. To the same effect, see McCrary, Elect. 635, and cases there collated. In Smith v. Regan, 54 N. J. Law, 167, 23 Atl. 1012, a similar statute is construed, and the chancellor, speaking for the court, concludes thus: "We do not in the law before us find indication of legislative intention differing from that exhibited in the old law. On the contrary, the positive injunction of the statute that 'at their annual meetings' the freeholders shall elect a fit person as collector implies that such election shall be had at each meeting, from which it necessarily follows, as the meetings are to occur yearly, that the term of office is limited to the period of time between them." In the case of Tuley v. State, 1 Cart. 500, the supreme court of Indiana construes a statute providing that a certain officer shall be annually elected, and hold from one election day until the next, to be an express injunction that he shall not hold beyond the next election day or the end of theyear, and the subject is dismissed in the following manner: "It is argued that, when the act of 1833 preserved to Tuley 'the term' for which he was elected, it meant, not the term of three years specially designated in the statute, but that other indefinite term which terminates on the qualification of a successor; but we think the former was intended. It could not be the latter." In the very recent case of Bilderback v. Board N. J. Sup.), 42 Atl. 843, by the use of the following language the same construction was placed upon a statute requiring the annual appointment of a trustee of the poor, and the court say: "It follows, by necessary implication, that the term of office of these trustees is fixed by law at one year, and that on the day of each annual meeting of the board of freeholders, the incumbency of the

trustees who were appointed at the preceding annual meeting is terminated" So, in Andrews v. State (Miss.) 13 South. 853, it was held that a clerk of courts, elected for a term of four years, could not hold over, although by a subsequent constitutional provision, adopted before the expiration of his term, such officers were expressly required to hold until their sucessors are elected and qualified. That the common law gives to the officer whose specified term has expired no right to hold over has been announced in this jurisdiction, and is sustained by an unruffled current of authority. Badger v. U. S., 93 U. S. 599, 23 L. Ed. 991; 1 Dill. Mun. Corp. 301; People v. Tieman, 30 Barb. 193; Paine, Elect. 224. As the exposition of the subject by JUDGE HANEY covers every essential point, and there is no escape from the conclusion reached, I concur in every respect.